## Simons *et al. versus* The Vulcan Oil and Mining Company.

1. Parties purchased oil land, and shortly afterwards with others formed a corporation to whom the land was conveyed at an advance. If the purchasers acted as agents of the company in purchasing the land, they could not charge a profit against their principal.

2. They would be in the same position if they assumed so to act without precedent authority, if their doings were accepted as the acts of agents by the company.

3. If in order to get up a company they represented themselves as having acted for one to be formed, proposed to sell at the prices they had paid, and their purchases were taken and stockholders invested on these representations, it was a fraud on those interested to allow them to retain profits paid them by the company in ignorance of the sums advanced.

4. If they had disclosed the exact sum paid for the land, and had refused to sell except at an advance which was paid them, they would have a right to retain the profits.

5. Where parties have so acted, an action in form *ex contractu* can be maintained, only by showing fraud in dealing with the company, by reason of which they should not *ex æquo et bono*, retain the moneys wrongfully obtained from it.

6. In investigations as to fraud great latitude of inquiry is always allowable.

7. There being evidence that the purchase and sale of land was the combined act of two parties, the publishing of a prospectus, advertisement, &c., by one was evidence against both.

8. The refusal to strike out the evidence of a witness afterwards ascertained to be interested, is not assignable for error. It is to be corrected by a request to charge that the evidence be disregarded.

9. Declarations of the parties if relevant are admissible, no matter where made.

10. A prospectus of an oil company stated that the company had purchased their land from the "original owner." *Held*, that this was not a term of art to be explained by experts.

11. The term implied that no profits were added to the price paid by the company on account of an intermediate buyer, &c., and excluded the idea of a purchase at speculative prices.

12. Agents, partners or associates cannot make profit out of their principals, copartners or co-associates for whom they have undertaken to act.

13. Directors are but the agents of the company, and have power to act only for the interest of the company, not against it.

14. The shareholders constitute the company, and the acts of the directors can be inquired into at their instance.

15. A fraud against a corporation by any or all of the directors, may be redressed by an action in the name of the corporation.

16. The action being joint, it was necessary to prove that the money had been received by both defendants.

17. The receipt of money by an agent is primâ facie evidence of the receipt by a principal, and by one partner that it is for the firm.

February 25th and 26th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Philadelphia:* No. 53, to January Term 1869.

[Simons v. Vulcan Oil and Mining Co.]

This was an action of assumpsit brought, December 9th 1865, by The Vulcan Oil and Mining Company against Henry Simons and William H. Weeks. The declaration was in the common counts. The plaintiffs' bill of particulars was in substance as follows:—Before December 1864 the defendants began measures for the incorporation of a company, under the Act of July 18th 1863, for incorporating companies for mining and other purposes, and had articles, *dated* December 5th 1864, drawn up and signed by themselves and others. A meeting of the corporators was held December 3d 1864, at which Simons was elected president and Weeks treasurer. Having taken the preliminary steps required by the act, the plaintiffs were duly incorporated.

"The defendants, after they began to organize the company, or shortly before they so began, but with a view to the company and for it, acting first as corporators with others, and subsequently as officers of said company, negotiated for, secured and received conveyances of certain tracts of land," viz.: In or about December 1864, from John Brown three tracts of land in Virginia of 1000 acres each; about the 28th of same month a tract from George W. Grier in Bedford county, Pennsylvania, of 50 acres; and about January 1865 a tract from George F. Morgan of 102 acres in Wirt county, Virginia. The conveyances were all made to Simons. The defendants repeatedly declared, both to the other officers and stockholders of the company, that they had bought these lands for the company from original owners; that the prices paid by the company were those paid to the original owners, and were low. The plaintiffs averred that these representations were false and fraudulent; that the conveyance from Brown recited a consideration of $50,000—whereas but $3000 had been paid to Brown; the conveyance from Morgan recited the consideration of $31,000—whereas they had paid something less than $7000. On the 23d of January 1865 they conveyed the Brown tracts to the company for $50,000, and on the 24th of February conveyed the Morgan tract to the company for $31,000, and the consideration, $81,000, was paid to them by the company. The action was brought to recover the difference between the prices paid by the defendants and those paid to them by the company, which it was alleged amounted to about $75,000. The defendants severed in their pleas, each pleading the general issue, &c.

On the trial before Hare, P. J., the plaintiffs gave in evidence articles of association of the defendants and J. L. Willoughby, Dr. Alfred Weeks and E. Benson Cox, dated December 5th 1864, and signed by all of them, associating themselves under the Act of July 18th 1863, mentioned in the bill of particulars, by the name of the Vulcan Oil and Mining Company, for the purpose of carrying on mining for coal, ochre and oil on the lands described in an accompanying schedule (being those mentioned in the bill

[Simons *v.* Vulcan Oil and Mining Co.]

of particulars), the office for business and meetings to be in Philadelphia, the capital to be $200,000, in shares of $1 each.   The schedule is signed by the same persons.   The acknowledgment was by the same persons before Alderman McCahen, January 4th 1865.   Also certificate to the auditor-general, dated January 5th 1865, certifying the same facts as in the articles; and in addition, "the amount of capital already paid in is $200,000."   Appended to the certificate is this affidavit:—  .

"Henry Simons, William H. Weeks and J. L. Willoughby, being duly sworn and affirmed according to law, do depose and say, that pursuant to a notice signed by J. L. Willoughby, one of the parties to the original agreement, stating the time, place and purpose of the meeting, a copy of which was given to each member at least three weeks previously, a meeting of the said Vulcan Oil and Mining Company was duly called and held on the 31st day of December, A. D. 1864, when and where the said Henry Simons was duly elected president, and the said William H. Weeks was duly elected treasurer, and the said Henry Simons, William H. Weeks, and J. L. Willoughby were duly elected a board of directors.   They further depose and say that all the facts set forth in the above and foregoing certificate are just and true, and that the schedule hereunto annexed, marked 'A,' is a description of the lands of the said company to the best of their knowledge and belief."

Also evidence of a meeting of the corporators held December 31st 1864, at which the corporate name was fixed, and Simons, Willoughby and Weeks were elected directors, Weeks elected treasurer, and J. P. Brosius elected secretary.

Also the letters patent of the incorporation, dated January 13th 1865: also the deeds from Brown to Simons, dated October 8th 1864, the consideration for the 2000 acres stated to be $30,000; for the 1000 acres $20,000; from Grier to Simons, dated December 28th 1864, consideration stated to be $500; and from Morgan to Simons, dated January 24th 1865, consideration stated to be $31,000.   Each of these deeds had revenue stamps of amounts corresponding with the consideration stated in the deed.   Also deeds dated January 23d 1865, from Simons to the plaintiffs for the Brown and Grier tracts; and deed of February 24th from Brown to the plaintiffs for the Grier tract.   The consideration in the deeds to the plaintiffs were the same respectively as in those to Simons.

The plaintiffs then offered in evidence a prospectus of the "Vulcan Oil and Mining Company of West Virginia," published November 17th 1864 in the Sunday Dispatch, a paper of Philadelphia, accompanying it with the receipt for its insertion from the proprietors of the paper and the testimony of Brosius, the secretary, that this receipt passed into his hands with other

[Simons *v.* Vulcan Oil and Mining Co.]

papers of the company delivered to him by Weeks. The offer was objected to by the defendant, admitted by the court, and a bill of exceptions sealed. The prospectus was as follows :—

"Vulcan Oil and Mining Company of West Virginia.

Negotiations now pending, will, in a few days, place this company in fee simple possession of the most successful oil territory in America.

The indications are that the Vulcan's wealth of oil will fully equal, if not surpass, the famed Columbia, now paying $1,000,000 in cash dividends.

To those contemplating investments, we would state that a few advance subscriptions for stock not bespoken, may be obtained at original price, one dollar per share.

J. L. WILLOUGHBY, Secretary pro tem., 434 Walnut street."

Also prospectus published in Philadelphia Inquirer, December 17th 1864, headed, "The Vulcan Oil and Mining Company of West Virginia. Chartered by the state of Pennsylvania. Capital $1,000,000. $5 per share."

The prospectus contained a description of the lands before mentioned, viz., the Virginia lands as "located in the heart centre of the great oil district of West Virginia * * in the well-known Burning Well and Great Kanawha Oil District."

"The company estates have been secured at really low prices ($81,000 in all), and are deeded direct from original owners to the stockholders of the Vulcan Oil and Mining Company."

The prospectus concludes :—

"Subscriptions to a limited amount of the stock (if not already taken), may be obtained at original price, $1 per share.

J. L. WILLOUGHBY, Secretary,
No. 434 Walnut street.
HENRY SIMONS, President."

This was objected to by the defendants, admitted by the court, and a bill of exceptions sealed.

The plaintiffs then gave in evidence a prospectus published in the Philadelphia Inquirer, January 5th 1867, headed :—

"LOOK TO YOUR INTEREST.

The Vulcan Oil and Mining Company of West Virginia.

Chartered by the state of Pennsylvania. Capital $200,000. $1 per share, full paid."

The body of the prospectus is the same as that of December 17th. This prospectus is signed: "HENRY SIMONS, President, U. S. National Wagon Works. WM. H. WEEKS, Treasurer,—of W. H. Weeks & Co., White Lead Manufacturers. J. L. WILLOUGHBY, Secretary, No. 434 Walnut street."

[Simons *v.* Vulcan Oil and Mining Co.]

William Humphreys, a witness for plaintiff, testified that the defendant Weeks on the 12th or 13th of November desired him to go to Wirt county, Virginia, to ascertain if a tract of land which he and Simons were about to purchase were oil territory : witness reported the oil prospects to be good. Weeks told witness that there was an arrangement to purchase one of the tracts before he went down. The deed to Simons was drawn by the direction of both Simons and Weeks, witness superintended the preparation of the deed, &c., the consideration was inserted by the direction of Simons and Weeks, who instructed him as to the amount, but did not explain why that amount was to be inserted.

H. B. Kelly testified for plaintiffs that, on the 13th of December 1864, he advanced $2000 to one Hollis to pay for four tracts in Fayette county, West Virginia, which Hollis had agreed to buy of R. Alsop and J. H. Waters. Four deeds for the lands were in blank from John Brown and wife, executed and dated October 8th 1864 ; between December 13th and 23d 1864, he made a bargain with Weeks for two of these 1000 acre tracts for $1000 each, the deeds for which were delivered on or about December 19th ; a few days after Weeks bought and received a deed for the third 1000 acre tract at the same price per acre. The deeds for the first two tracts were cancelled and one executed by Brown in their stead ; the substitution was made at Weeks' request ; the one deed was executed in blank and thus delivered to Weeks, Simons' name was inserted afterwards. The consideration also was left blank at Weeks' request ; $30,000 was afterwards inserted. Witness asked Weeks what consideration was to be inserted, he replied, "Never mind that just now, I don't know." The last deed was dated back to correspond with the original deeds, so that the searches before made might cover the conveyance. When the deed for the third tract was handed by witness to Weeks, there was a blank for the grantee's name ; witness did not recollect whether there was a blank for the consideration.

Under objection by the defendants, the court allowed Brosius to testify that he had frequent conversations in January 1865 with Weeks at the company's office, which was also Weeks' office, when Simons was not present, in relation to the purchase of the lands ; witness said : "Persons often doubted my word, out of doors, whether the land was put in at cost. I asked him if he really made it for nothing ; he said he had. I asked him once why he was so liberal as to make the transfer for nothing ; he said he had bought land adjoining which would be increased in value." Witness, in consequence of these statements, told "people outside" that the land had been bought by the company at exactly what it had cost Weeks and Simons. For the admission of this testimony the court sealed a bill of exceptions.

Brosius testified that copies of the prospectus were lying about

[Simons *v.* Vulcan Oil and Mining Co.]

the company's office, and were circulated amongst persons who they wished should subscribe; Simons and Weeks were at the office frequently, Weeks the most so. He further testified that he had been a stockholder, but had sold all his stock a few days before the trial, to the president of the company for the purpose of becoming a witness. He gave much further testimony tending to support the issue on the part of the plaintiff. It afterwards appeared that whilst Brosius was a stockholder debts had been contracted by the company which were still unpaid, and it was doubtful whether the property of the company was sufficient to pay them.

The defendants asked the court to strike out Brosius' testimony, which was refused, and a bill of exceptions was sealed. ·

Jacob Amon, called by plaintiffs stated on his *voir dire* that he was a stockholder in the " Government Oil Company" ; that Simons had told him that the plaintiffs owed the Government Company $3000 or $4000, which had been owing over a year and no effort had been made to collect it. The defendants objected to the competency of the witness; the court admitted him to testify and sealed a bill of exceptions. Witness then testified that in January 1865, at the office of the company, Weeks told him " the property was conveyed directly from the owners in Virginia, at the specified amounts stated in their advertisements, and conveyed directly from the parties in Virginia to the stockholders of the company." That afterwards Simons came in and upon witness inquiring of him to the same point, he assured witness that the statements made by Weeks were true, and that he would vouch for anything which Weeks might say on the subject.

There was evidence that $8500 were paid by the defendants for the Wirt county property, for which the plaintiffs paid $31,000.

The plaintiffs read the affidavit of Weeks made under a warrant of arrest, November 11th 1865, in which he denied most of the material allegations made by the plaintiffs then and on this trial, but testified that the lands had been purchased by him for himself and Simons, and the deeds made to Simons with his knowledge and consent nearly a month before the formation of the plaintiff's company; that it was understood by the company and its stockholders what price was being paid, and that Simons was the owner of the land; that the profit he and Simons made was the difference between $15,000 and $81,000, the division of the profits was to be equal, and Simons had already received $12,000 on account; that he and Simons bought the lands to make a profit of them. Weeks further stated " Mr. Simons in the matter of the purchase acted with me and I with him. In everything that I did I did for both, and what he did, he did for both." The plaintiff gave evidence also that the company had paid $81,000 for the land: also evidence that stock to the amount of about $125,000, including

[Simons *v.* Vulcan Oil and Mining Co.]

$5000 by each of the defendants, had been subscribed and paid for, and other evidence tending to sustain his part of the issue.

The defendants offered the depositions of Thomas P. Potts, and others who had experience, to prove the manner in which most of the oil companies were organized at the time of the organization of the Vulcan Oil Company, showing what the words " original owner" meant. The offer was objected to by the plaintiff, rejected by the court, and a bill of exceptions sealed. The defendants examined Thomas J. Clayton, Esq., who testified that a few days before the 4th of January 1865, Weeks brought him a deed of the land in Wirt county, and abstracts of title of the land in Kanawha, telling him that the property was about to be disposed of to an oil company, that the officers pro tempore of the company desired witness to prepare papers for a charter: they had held an informal meeting; witness told Weeks and some of the officers that there would have to be notice of three weeks to each corporator : they were anxious to have the charter immediately and witness suggested that a notice should be prepared, dated three weeks previously, and each party should accept service; witness prepared such notice dated December 7th 1864, calling a meeting for December 31st, and all the parties interested accepted service by writing appended to it: the papers were taken to Harrisburg at once and the charter obtained : the meeting was held December 31st 1864. Witness also testified that he disapproved of the prospectus of December 17th 1864, because the $5 per share had not been fully paid, and directed another in which the shares should be stated at $1 per share. He also gave testimony tending to show that it was known by the directors and company that the defendants were selling the land to them at a higher rate than they had given for it; that there was no concealment; he testified generally in answer to the plaintiffs' case. There was other evidence for defendants of the same character. They gave in evidence for the purpose of showing that the purchase had been confirmed by the company, the minutes of a meeting of the directors February 6th 1865, held after due notice, at which the proceedings of the meeting of December 31st were confirmed by resolution and two additional directors elected; also minutes of a meeting held February 24th, the additional directors as well as the defendants being present, at which a statement of the finances was submitted, showing the payment of $81,500 for the land, the amount of stock unsold $9545, and other items, making in the whole $125,000 : also minutes of other regular monthly meetings until August, at which statements of the finances were submitted to the directors.

The defendants submitted these points :—

1. This action can be maintained only by proof that the lands were purchased by the company itself from the several parties owning them, and that, in making the purchase, Simons and

Weeks were acting, not for themselves, but for the company, and as agents for the company.

2. The action cannot be maintained unless the evidence shows that both the defendants were so acting, and if the jury believe that such agency existed on the part of Weeks but not on the part of Simons, they must find for defendants.

3. This action cannot be maintained by mere proof, if any such exists, that the acts or conduct of defendants were fraudulent or deceptive, or that they made untrue statements of the value, or of the character, of the lands, or of the title acquired in the same, or of the parties from whom they purchased the same. Facts such as these, if they exist, may be ground for another form of action, but cannot sustain this case. In this action, a recovery can only be had by proving that defendants were agents of plaintiffs in buying the land, and not purchasers for themselves, of land which they afterwards sold to plaintiffs.

4. The land was put in at $81,000, in the formation of the company, by the five original corporators; these five constituted and represented the company at that time, and by their acts bound the company. It is the clear and uncontradicted evidence of the case that these five corporators then constituted the whole company, and, representing it, purchased the land for the company, from Simons and Weeks, and made it the basis of their organization. In view of these facts, the verdict must be for defendants.

The court, after referring to the facts and stating some legal principles, proceeded:—

"But it is also true, that when parties stand in a relation of trust and confidence, and the truth is withheld, although innocently' and without an intention to deceive, the law will esteem the transaction void. The relation of principal and agent affords an instance of this rule, it being the duty of the agent to communicate the truth to his principal, and remove any false impression that may exist in the mind of the latter.

"But it is not the only instance; [the rule applies wherever there is a fiduciary relation, and is applicable in a case like the present, where two or more persons unite for the purpose of establishing an association, throwing the books open to the public, and inviting every one who thinks fit to come in and take part in an enterprise of profit, a common enterprise, where, if it is successful, all will reap the benefit.] [Persons who come forward in such a capacity, as corporators or otherwise, assume the duty of good faith; and all they do in the prosecution of the enterprise, with a view to establish the company—although the company be not yet established—must be done with fidelity towards those for whom they profess to act, and who will subsequently be affected by their conduct. It makes no matter that the stockholders have

[Simons *v.* Vulcan Oil and Mining Co.]

not yet come in, if the acts of the corporators affect their interests, those acts must be done honestly; because the circumstance that they are absent increases rather than diminishes the obligation to be careful of the interest of persons who, from the nature of the case, cannot take care of themselves. Just as an agent cannot buy land, or buy anything else for his principal, and then turn it over to the principal at a higher rate than he himself paid, unless he acquaints the latter with the true state of the case; and will be still more clearly responsible if he employs any undue means to conceal from the principal that he is making a profit where none ought to be made. So corporators who, in establishing a company, invite third persons to subscribe, cannot deal with that which is to be the property of the company in a way to make an illegitimate profit for themselves; and if they do so without disclosing the truth, the profit will be illegal; and the company entitled to compensation.]    * * *

" In order to judge whether this title was acquired by the defendants for themselves, or on behalf of the corporation, we must turn from the deeds to the acts and declarations of the parties in the relation in which they stood to the corporation, and see whether looking at what they said and did, it does or does not appear that they bought the land in a way rendering it their duty to treat it as land bought for the company, and therefore to be transferred to the company at the price paid to the original owners, unless the contrary was agreed upon with a full knowledge of all the circumstances.

[" One material fact in evidence on this point is the advertisement published by the authority of the five corporators; and more particularly, as the plaintiffs contend, by the authority of the defendants, as being the persons principally active, and, as the event proved, chiefly interested in the business. In these advertisements the Vulcan Oil Company, which, though not yet formed, was spoken of as if it were already in existence; was said to be possessed in fee simple of the most successful oil territory in the market of the very oil territories which had been purchased by Weeks in behalf of himself and the other defendant, Simons. These tracts were particularly set forth and referred to as belonging to the company, and as there is no evidence that the company ever owned any other land, the defendants rely upon this as showing that this land came to the hands of Messrs. Weeks and Simons, not as their individual property, but as the property of the company. The argument is, and certainly it is a fair argument, that if the representations of the defendants with regard to the ownership of the land were true, they could only be true in this: that Mr. Simons, in taking the title, took it not for himself, but as a corporator in behalf of the company, and virtually stood in the position of an agent or trustee.]    * * *

[Simons *v*. Vulcan Oil and Mining Co.]

"There is another statement in these advertisements pointing in the same direction, which is, that these lands are spoken of as conveyed by the original owners to the company as a corporation. [It does not seem, giving any fair effect to the English language, that the defendant Simons would be spoken of as the original owner of land which he and the other defendant had just purchased from a prior owner, and which at the time when the first advertisement was published, had not been conveyed by the grantor: and we have seen that he did not acquire title to the land in Wirt county until some weeks afterwards. If, therefore, the declaration that the land was acquired by the company from the original owners was in good faith, the only plausible or reasonable interpretation that could be put upon it, by the other corporators to the stock, was that when the land was conveyed by the original owners to Simons, he took and held it in trust for the corporation.]

["There is other evidence tending to support the same conclusion; for when the first meeting of the corporators was held, the names of the defendants Simons and Weeks were entered upon the books as having advanced $50,000 for the company. Now it is conceded that no such sum was paid by them at any time or in any way; and the only way in which the entry can be explained is by supposing that the $50,000 which they did not pay, but which they were falsely described in the deed as having paid for the Kanawha lands, was represented and entered by them as money paid by them for the association. In this sense, that is if they bought the land for or on behalf of the company, they might be said to have advanced $50,000 for the use of the company; but it is not easy to see how this could be alleged with regard to them in any other sense.] It is true that when the books came to be more formally opened under the advice of Mr. Clayton, this entry was stricken out and another of a somewhat different character inserted; still it stands as declaratory of the intentions of the parties.

"But there is still another point: the consideration for the Kanawha land, though only $3000, was by the direction of the defendants, or one of them, described in the deed as being $50,000, the sum at which it was subsequently conveyed to the company and paid for by them. [If the defendants stood relatively to the company in the position of persons who, having bought on their own account, might ask a higher price than they had given, it is not easy to see what fair motive there could have been for misrepresenting the consideration.] Because the defendants might have said, we bought these lands for ourselves with a view, indeed, of selling them to this association, but not for it. We have a right to ask what we please; and though we paid only $3000, will not sell for less than $50,000. [Or in another aspect. If it

[Simons *v.* Vulcan Oil and Mining Co.]

was land bought for the company as a basis on which they were to be organized, the defendants could not claim more than they had given, and the insertion of a false consideration may be regarded as indicating that the defendants knew this, and therefore sought to conceal the truth.] * *

"This is the evidence, so far as there is evidence in the case, that these lands were in fact purchased by the defendants, ostensibly for the Vulcan Oil Company; and if they represented this to be so, if they held it out to the world as the true state of the case and induced persons to subscribe on the faith of their declarations; if they so dealt with the company and obtained their price, what their real purpose or object was is immaterial, because it is impossible to read the secret purposes of men, and in dealing with them we can only look to what they avow. [It is possible that their secret and avowed purpose were at variance with each other; their secret purpose was to buy the land for themselves as their own property, with a view of transferring it to the company at an advance; their avowed purpose to hold it as the property of the company with a view of obtaining subscribers for the stock; but unless that secret purpose was made known, it ought not to avail against the purpose which was proclaimed, and by which they were believed by others to be actuated.] * *

"Another point has been made in the course of the case, and it is this:—That whatever cause of action might grow out of the insertion of a false consideration, and the failure to communicate the truth; out of the representation that the land had been bought as the property of the company, and the transfer of it to them at an advance in price: still, if the other corporators were not in point of fact deceived, if they knew that the defendants meant to treat the land as their own, and to make an exorbitant profit out of the transaction, then under these circumstances there would be no right on the part of the corporators or of the company who were their successors to have redress for the wrong thus committed.

"It is no doubt as a general principle true, that whatever be the grossness of the deceit practised by one man on another, if in fact it does not deceive; if the party on whom the attempt is made knows the truth really, and is still willing to go on, he cannot claim compensation for a wrong that was designed but not accomplished. But this can only be true where the party who assents will be the loser by the fraud, or where he is in a position to bind the parties on whom the loss will fall. It cannot apply where he is bound to act in good faith to others and yet sanctions a fraud or imposition on them.

["In order to know whether the assent of the other three corporators, Dr. Weeks, Mr. Willoughby and Mr. Cox, would—if given with a knowledge of what was going on—preclude redress,

[Simons v. Vulcan Oil and Mining Co.]

we have only to suppose them parties to the transaction, intending to share an illicit gain among themselves. It is very obvious that if the two could not thus act, the five would equally be precluded. If the five had represented themselves as having purchased land for the company, at the price for which they were offering to sell it again, they could not by these means have deprived the corporation of redress when subsequently organized. And what they could not do if they were parties to the transaction, neither could they by conniving at it on the part of others; for where a man could not keep a profit himself, he cannot consent that another shall make and keep it by wrong or untruthfulness."]

In answer to the defendant's points the court charged :—

"There is an inconsistency, due it may be to a mere slip of the pen, in the language of the 1st point. It asks first that I should say, that unless the lands were purchased by the company itself, the action cannot be maintained; and then asks me to say, that in making the purchase the defendants must have been acting for themselves, but for the company. That is, I am asked to say, that in order to maintain the action the land must have been purchased by the company for itself, and next by Messrs. Simons and Weeks for the company. What is meant, I suppose, is, that unless this was a purchase for the company by Messrs. Simons and Weeks, there can be no recovery.

"If it were not for the form of the pleadings, I should be unable to answer this point in the affirmative, because if any man, the merest stranger, deceives or leads the party with whom he is dealing into error on a material point, the law will give redress. There is evidence on this head which I should have to submit to you; but under the pleadings I affirm the point, as it has indeed been the ground of my instructions to you throughout the charge, unless this purchase was made by Messrs. Simons and Weeks for the company and not for themselves, there can be no recovery here. But, in saying this, I reiterate that if they held themselves out to the world by advertisements, and by oral declarations intended to be and actually published, as having bought these lands for the company, their secret purposes in the transaction will not avail to prevent them from being bound by their public declarations.

"I also affirm the 2d point.

"Unless the parties were acting together, either as partners or participators, this action cannot be maintained. It is, however, in evidence that they shared the profits, and that affords a fair ground for inference—necessarily conclusive it is not—that they were both concerned in the transaction; and besides Mr. Weeks originally negotiated for the land which was subsequently conveyed through Mr. Simons to the plaintiffs.

"The 3d point contains an affirmative and negative allegation, and states explicitly what I have already told you; that if it was

[Simons *v.* Vulcan Oil and Mining Co.]

not for the form of the pleadings, you would have to decide whether there was not actual fraud, even if the lands were purchased for the company.   I do, however, affirm the negative part of the proposition; and in connection with it, the other.   That is to say: Unless the land was purchased for the company, there cannot be a recovery here; you will, however, remember the caution which I have already given that what people mean is to be judged by what they avow, and not by any secret design which they do not declare.

"I decline to instruct you as requested in the 4th point, that the verdict must, under the evidence, be for the defendants."

The defendants excepted to the charge and answers of the court. The court then said :—

"The defendants' counsel think that I have taken two matters from you as questions of law, which I meant to leave to you as questions of fact.

"One question is, whether Mr. Cox, one of the corporators, authorized the advertisements.   I certainly did not intend to take from you the fact, whether it was authorized by the five or by four. The more material question is, whether they were authorized by the defendants; but by whom authorized, I leave to you as a question on the evidence.

"The other point is perhaps more important.   It is said, that in speaking of the alleged knowledge of the other corporators, I have taken the question of their knowledge from you, instead of leaving it to you on the evidence.   Such was not my intention. [Whether they knew the real state of the case or not, is a question for you to decide on the evidence.   The effect of their knowledge in precluding the plaintiffs, depends upon another question of fact. That is to say: whether the land was bought for the company under circumstances making it incumbent on the defendants to convey for the price which they gave, for if it was so bought the other corporators could not, by sanctioning an overcharge, make it binding on the plaintiffs.]"

The verdict was for the plaintiffs for $80,648.98.

A rule which was taken for a new trial was discharged, Thayer, J., dissenting, and judgment entered on the verdict May 2d 1868.

To this judgment the defendants took a writ of error.

They assigned amongst other errors :—

2 and 3. The admission of the advertisements of November 27th and December 17th 1864, containing the prospectus of the Vulcan Oil Company.

4 and 5. Admitting the testimony of Brosius as to representations made to him by weeks as being out of the presence and knowledge of Simons.

6 and 7. Refusing to strike out the testimony of Brosius and

[Simons v. Vulcan Oil and Mining Co.]

receiving that of Amon; both witnesses being as was alleged incompetent on account of interest.

8. Admitting the testimony of Amon as to representations made to him by Weeks, out of the presence and knowledge of Simons.

9. Rejecting the testimony of Potts and others to explain the meaning of "original owners."

10-13. The answers of the court to the defendants' points.

14-22. The portions of the charge enclosed in brackets.

*A. M. Burton* and *T. Cuyler*, for plaintiffs in error.—As to 4th to 8th specifications, cited Acts of 27th March 1854, § 8, Pamph. L. 216; July 18th 1863; Gerhard v. Bates, 2 E. & B. 476; Burns v. Pennell, 2 H. L. 497. As to 9th, 1 Greenlf. on Ev. § 53; Chitty on Contracts 81; Selden v. Williams, 9 Watts 9; Ellmaker v. Ellmaker, 4 Id. 89; Hart v. Hamett, 18 Vt. 127; Eaton v. Smith, 20 Pick. 150.

As to the charge: To make a resulting trust the money must have been paid before or at the purchase by the cestui que trust: Hill on Trustees 97; Magee v. Magee, 1 Barr 405; Freeman v. Kelly, 1 Hoffman's Ch. R. 90; Jackson v. Moore, 6 Cow. 726; Batsford v. Burr, 2 Johns. Ch. 409; Conner v. Lewis, 16 Maine 274; Pinnock v. Clough, 16 Vt. 506; Edwards v. Edwards, 3 Wright 378. Promoters of a company are not agents for the company: Lindley on Partn'p. 25, 27, 319; Shrewsbury v. N. S. Railway Co., Law Rep. 1 Eq. 614. The prospectus, the articles of association and the certificate, as recorded, form the basis of the contract between the company and the subscribers to its stock: L. Brown on Companies Act 2, 3; Wordsworth on Joint Stock Companies 199, 200, 235, 246; Fox v. Clifton, 6 Bing. 776; Lindley on Part'p. 25, 497; Bank v. Tyrell, 5 Jurist N. S. 924; Great Luxemburg Railway, 4 Id. 839. Without actual fraud shocking inadequacy of price does not render a sale void: Davidson v. Little, 10 Harris 245; Hill on Trustees 152; Kerr v. Kitchen, 7 Barr 486; Dorsey v. Jackman, 1 S. & R. 52. The policy of the law in Pennsylvania is not opposed to a person being at the same time a partner in two firms: Act of April 14th 1838, Pamph. L., § 1, Purd. 776, pl. The means of knowledge were open to all the parties; the plaintiffs slept on their rights till the property had declined in value and they should not recover: Piarsoll v. Chapin, 8 Wright 9; Rockafellow v. Baker, 5 Id. 319.

*E. S. Miller*, for defendants in error.—As to Amon's competency: Fell v. McHenry, 6 Wright 41; Gillespie v. Miller, 1 Id. 250; Grove v. McCalla, 1 Am. Law Reg. 251. The specifications from 14 to 22 are not according to the rule: Criswell v.

[Simons *v.* Vulcan Oil and Mining Co.]

Altemus, 8 Harris 124; Hutchinson *v.* Campbell, 1 Casey 273; Rice *v.* Farmers' and Drovers' Bank, 10 Harris 119. Money had and received lies wherever *ex æquo et bono* money in the defendant's hands should be received by the plaintiff: Hunter *v.* Welsh, 1 Stark. 224 (178); Powell *v.* Reese, 7 Ad. & E. 426; Roscoe's Ev. 413; Hill *v.* Perrott, 3 Taunt. 274; Smith *v.* Jameson, 5 T. R. 601; Marsh *v.* Keating, 1 Bing. N. C. 216; Stone *v.* Marsh, 6 B. & C. 565; Eastwick *v.* Hugg, 1 Dall. 223; Morris *v.* Tarin, Id. 147; D'Utricht *v.* Melchor, Id. 428; Rapalje *v.* Emory, 2 Id. 54; Dorsey *v.* Jackman, 1 S. & R. 61; Bogart *v.* Nevins, 6 Id. 368; Irvine *v.* Hanlin, 10 Id. 219; Mathers *v.* Pearson, 13 Id. 258; Hinkle *v.* Eichelberger, 2 Barr 484. As to the joint liability of the defendants: Ex parte Shakeshaft, 3 Brown's Ch. C. 197; Story's Eq. Jur. §§ 1225, 1282; Fellows *v.* Mitchell, 1 P. Wms. 83; s. c. 2 Vern. 504–415; 2 Fonbl. Eq. b. 2, ch. 7, § 5; Clark *v.* Clark, 8 Paige 152; Williams *v.* Nixon, 2 Beav. 472; Hill on Trustees 520, 814; Gilchrist *v.* Stevenson, 9 Barb. 16; Lewin on Trustees 767, 768; Lindley on Part. 250, 300; Sleech's Case, 1 Mer. 563; Baring's Case, Id. 614; Sadler *v.* Lee, 6 Beav. 324; Brydges *v.* Branfil, 12 Sim. 369; Blair *v.* Bromley, 2 Ph. 359; Wilson *v.* Moore, 1 M. & K. 127, 337; The Attorney-General *v.* Wilson, 1 Craig & Phil. 1; Munch *v.* Cockerell, 8 Sim. 219; Walker *v.* Symonds, 3 Swanston 1; Lyle *v.* Kingdom, 1 Collyer's Ch. Rep. 184; Wilson *v.* Moore, 1 Myl. & K. 127; Vandebende *v.* Livingston, 3 Swanst. 625; Perry *v.* Knot, 4 Beav. 176; Marsh *v.* Keating, 1 Bing. N. C. 216; Stone *v.* Marsh, 6 B. & C. 565; Smith *v.* Jameson, 5 T. R. 601; Holmes *v.* Higgins, 1 B. & C. 74; Lucas *v.* Beach, 1 M. & G. 417; Story on Part. §§ 166, 167; Story on Agency, § 232. Conspirators are jointly liable: Hinchman *v.* Richie, Brightly's Rep. 143; Shaple & Warner *v.* Page & Page, 12 Verm. 519; 2 Hilliard on Torts 454; Kimmell *v.* Stoner, 6 Harris 156; Kimmell *v.* Greeting, 2 Grant's Cases 125; Colt *v.* Woolaston, 2 P. Wms. 154; Hichens *v.* Congreve, 4 Russell 562: Green *v.* Barrett, 1 Sim. 45; Blain *v.* Agar, 2 Sim. 289; Cridland *v.* De Mauley, De G. & S. 459; Beechey *v.* Lloyd, 3 Drew. 227; Aycinena *v.* Peries, 6 W. & S. 243; Martzell *v.* Stauffer, 3 Pa. 393; Haldane *v.* Fisher, 1 Yeates 121; Nockels *v.* Crosby, 3 B. & C. 814; Wontner *v.* Shairp, 4 Com. B. 404; Jarrett *v.* Kennedy, 6 Id. 319; Walstab *v.* Spottiswoode, 15 M. & W. 501; Watson *v.* The Earl of Charlemont, 12 Q. B. 856; Smith *v.* Jamieson, 5 Term R. 601; Dundas *v.* Muhlenberg, 11 Casey 351; Heudebourck *v.* Langton, 3 Carr. & P. 566.

The opinion of the court was delivered, May 11th 1869, by

Thompson, C. J.—A great point of contest on the trial below was as to the capacity in which the defendants acted in acquiring

[Simons *v.* Vulcan Oil and Mining Co.]

the territory on which operations in mining for oil were to be inaugurated and carried on by a company intended to be formed; and whether they professed to their associates and the public that they had purchased it for the company and were conveying it to the company at original cost, content like other shareholders to take their chance of profits out of the stock to be issued. There was much testimony on the point, tending to prove these to have been their representations. Besides the deeds from their vendors, which exhibited on their face as considerations paid, sums greatly in excess of those actually paid, prospectuses were issued by them in connection with their associates for circulation and publication in newspapers, representing that the lands acquired were obtained at first cost from the vendors. All the testimony on this point received by the court, was submitted to the jury with full and explicit instructions, by the learned judge trying the case. In these instructions was contained the principle accurately announced, that if the defendants in fact acted as agents of the company in acquiring the property, they could not charge a profit as against their principal. Nor was their position any better if they assumed so to act without precedent authority, if their doings were accepted as the acts of agents by the association or company. If in order to get up a company·they represented themselves as having acted for the association to be formed, and proposed to sell at the same prices they paid, and their purchases were taken on these representations, and stockholders invested in a reliance upon them, it would be a fraud on the company, and all others interested, to allow them to retain the large profits paid them by the company in ignorance of the true sums actually advanced.

On the facts as submitted, the jury found against the defendants, and we are now to see whether there was any error in the law as laid down by the court.

In Lindley on Part. 497, the principles arising on facts like those referred to, are very succinctly stated. The language of the learned author, after stating the rule that neither partners nor directors of a company are at liberty to make individual profits out of the business of the concern without the knowledge and assent of associates, says: "The rule under consideration is peculiarly applicable to transactions *which precede the formation* of a company or partnership. Judging from recent events and disclosures, nothing seems more common than for a person in getting up a company to obtain for the company property of which it is in want, and try and make the company pay him more than he gave for it. Such a transaction can never stand. There may undoubtedly be a valid sale to a company by persons engaged in getting it up; but once let it be shown that the alleged vendor obtained the property when it was his duty to obtain it for the company, and it immediately follows that he cannot, without the fullest

disclosure on his part, charge the company with more than he actually gave." To the same effect also is the opinion of Sir J. Romilly, M..R., in The Bank of London *v.* Tyrrell, 5 Jurist, N. S. 924. See also the same principle in the Great Luxembourg R. R. Co. *v.* Magney, 25 Beav. 586.

The principle is undoubtedly the same where parties profess to have acted for a company and their purchases have been accepted on representations that they were ·made for it. In one or the other of these attitudes, namely, as agents of a company to be gotten up, or as having professed so to have acted, the jury must have found they stood. In either, it seems clear, they could not legally retain the advance price on the property which they received.

To ascertain whether the result arrived at through the finding of the jury is to stand, ,we will consider first the exceptions to the ruling of the court on points of evidence :

1. The exception to the exclusion of a portion of W. L. Humphrey's deposition, was not much insisted on in argument, nor could·it well have been, and we dismiss it without further notice.

2. The 2d and 3d exceptions relate to reception in evidence of the prospectuses of the Vulcan Oil Company, published on the 27th November and the 17th December 1864. We think they were admissible, without doubt, in the circumstances of the case. Notwithstanding the action was in form *ex contractu*, yet it could only be successfully maintained by showing imposition and fraud on the part of the defendants in dealing, as it was alleged they did, with the ·company, by reason whereof *ex æquo et bono* they ought not to be allowed to retain the moneys wrongfully obtained from it. To establish fraud was the turning point in the plaintiff's case. That was to be done by proving facts and circumstances the results of the acts and declarations of the defendants upon the company. In all such investigations great latitude of inquiry is always allowable.

There was testimony proper to go to the jury, tending to show Weeks's connection with the advertisement of the 27th November. Such, for instance, as the receipt of the publisher, for his charge for advertising, handed with other papers of the company, by him to the secretary after its organization; the reference to Weeks's place of business in it as the office of the company, and to negotiations then on foot, which were subsequently shown to be those conducted by the defendants through their agent Humphreys, who was at that time in the West looking for oil territory for them. There were many other circumstances preceding or subsequently given in evidence, to warrant the reception of this evidence. It was a step towards the fact to be established, namely, that the defendants were holding out to the public, that real estate was being secured by them for a company to be organized, and that it

was to be put into the concern at what it cost and no more. It was material evidence against both defendants, provided the transaction of the purchase and sale was the combined act of both, which the testimony certainly, we think, sufficiently showed it was. It was properly received.

So also was the prospectus of the company of the 17th December. That was signed by Simons, as president *pro tem.*, and Willoughby, as secretary *pro tem.* It was the declared act of one of the defendants, and was clearly evidence under the bill of particulars, which proposed to show the joint action of the defendants in accomplishing the sale to the company for $81,000 and upwards, and their joint receipt of the purchase-money from it. As the act of Simons it was clearly evidence against him, and might or might not be against Weeks, the other defendant, on the testimony given and to be given. It was a fact in the transaction, and not to be excluded because of a possibility that the jury might mistakenly suppose the company to be organized, before it was, in fact. If that apprehension was the ground of objection, the jury would doubtless have been apprised that they must not fall into that error. We think the evidence was properly received, and this error is not sustained.

3. We perceive nothing in the argument of the 4th, 5th, 6th, 7th and 8th assignments of error, which creates a doubt of the accuracy of the learned judge below in the rulings which are the subject of them. We will consider them together.

The declarations of Weeks, a party to the suit, relating to the subject-matter of it, were evidence against himself, no matter when made. Whether they should affect Simons, would depend on whether their acts amounted to a joint enterprise, to induce the company about to be organized, to agree to purchase, and after organization to perfect the purchase of the lands secured by them in West Virginia, at the sums they represented that they had paid for them. Under such a state of facts the declarations of one would be evidence against both. If they assumed to be or were partners in fact in the transaction, there could be no doubt that the declarations would be evidence against both. There was evidence of a partnership, or joint purchase by the defendants of these lands as well as of a sale for the joint interest of both. On both grounds the testimony was properly received.

Nor was there any error in the refusal of the court to strike out the testimony of Brosius on the ground of interest, even if such refusal was assignable for error, which we have said is not the case, where the testimony of witnesses is given without objection: 11 Casey 792. The correction in such cases is a request to charge that the evidence be disregarded. His supposed liability for non-performance of his official duties, was neither fixed nor threatened, so far as the objection discloses. He was certainly

[Simons *v.* Vulcan Oil and Mining Co.]

not directly involved in the result of the verdict; nor could it be evidence for or against him in any subsequent suit. His supposed liability was a presumed peril, contingent and remote, and did not disqualify him. Indeed it would have required a trial to determine the validity of the grounds of objection, and the court could not arrest its proceedings to indulge the parties in this. There was no error in this ruling.

The fact that the witness, Jacob Amon, was a stockholder in a company to which the plaintiff was indebted, was not a ground of incompetency to testify. A creditor may be a witness for his debtor: Fell *v.* McHenry, 6 Wright 41; Gillespie *v.* Miller, 1 Id. 250. We have already noticed an objection to the testimony given of the declarations of the defendants. No matter where they were made, if they were relevant they were receivable. Their effect would be another matter with which the jury had all to do.

4. The 9th specification of error is overruled. The words "original owners," in the prospectus, were not terms of art, science or trade, which required the aid of experts to explain. Nobody could well mistake their meaning. They simply imported that no profits were added to the prices paid by the company for their lands, on account of any intermediate party, buyer or agent between it and the precedent owners of the soil. It excluded the idea of a purchase at speculative prices. This was the import of the terms, and to convey that idea in plain language was the object in using them. The court committed no error in refusing to hear an exposition of words which would in all probability have disturbed their meaning, or have attributed an entirely artificial one, supposed but not settled, to spring out of dealings incident to oil property. Their ordinary meaning was well understood, and in this sense they were most fitly used; at least there was nothing to show that they were not so used. It was, therefore, not a case for experts or skilled witnesses to interpret.

5. The exceptions to the charge are thirteen in number. The answers to the 1st, 2d and 3d of these were substantial, and I might say literal, affirmations of the points of the defendants of which they are predicated. The court laid down the law favorably to them by the instruction to the jury that, unless the land was purchased for the company by the defendants, there could be no recovery against them for the advanced price paid them. In this the court but affirmed the familiar doctrine that an agent cannot make profits out of his principal, in the business of the agency, nor a partner out of his copartner without his assent, nor an associate out of co-associates for whom he has undertaken to act. That this is the law authorities need not be referred to, to prove. It is elementary. It was also assented to, that both defendants must be shown to have engaged in the transactions of the purchase and sale afterwards to the company, and in a joint

[Simons *v.* Vulcan Oil and Mining Co.]

participation in the receipt of the purchase-money, before there could be a recovery against them. This was what the defendants contended for, and the answers of the court need no vindication at our hands.

The 4th and last point the learned judge refused. It assumed the fact that the land was put in at $81,000 in the formation of the company, by the assent of the five original copartners; that they represented the company, and bound it by their acts and assent, and that therefore the verdict should be for the defendants.

This, in effect, asserts the position that the organizing board of directors was the company, and whatever it did, could not be inquired into by the corporation put in motion at the instance of the stockholders. This is an error, and results from overlooking the fact that directors are but the agents and trustees of the company; that they have power only to act for the interest of the company, and not against it. The shareholders constitute the company where there is stock, and not the directors. It was therefore well put, in the charge of the learned judge, that the directors had no power to bind the stockholders by allowing profits to the defendants, after holding out in their prospectus that the property was obtained at original prices; and that the defendants could not claim any, if they hold out that they had purchased the property for the company, and were conveying at original prices. A fraud perpetrated against the corporation by any or all of the directors, may assuredly be redressed by such an action in the name of the corporation. As already said, they are its agents and trustees, which implies accountability to their principal. It was, therefore, not error to hold as was held in the court below, that the act of the directors, even if they knew the price paid for the land was less than the sum at which it was sold by the defendants to the company, did not preclude inquiry, and a recovery back of the excess, if that excess was not legally receivable by the defendants. In law this position was undoubtedly and properly asserted, and at the same time the jury were left free to consider whether the facts presented such a case. We do not doubt that if the defendants had disclosed the exact sum at which they bought the lands, and had refused to sell for less than the sum which they eventually received, their right to hold the sums received would have been unimpeachable; but the facts in evidence were such as satisfied the jury that there was concealment and misrepresentation as to the terms of purchase by the defendants professing to have acted for the company. The deeds from the original vendors proved this. But it is not our purpose to discuss the facts, and we will not enlarge further than to say we think the court committed no error in refusing to affirm the defendants' 4th point, and charging as they did, in the general charge, in this phase of the case.

6. We have very carefully examined the charge of the learned judge, and the exceptions to it, and we think there is nothing in any of them which needs discussion to vindicate the accuracy of the court. The case was presented to the jury fairly and clearly, on unexceptionable principles, all of which were afterwards reviewed and approved by the court in banc. And as on a careful review here, we have not discovered error in any of the specifications brought to our notice, the consequence is, that the judgment below must be affirmed.

The point whether there could be a recovery against both defendants in this form of action, without showing the actual receipt of the money by both, although not distinctly raised by any point in the case, has been somewhat discussed on argument. Undoubtedly this was a fact necessary to be proved, but, like any other fact, it was susceptible of being established by proof of acts and declarations of the parties sought to be charged. The receipt by an agent of a party would be primâ facie evidence of the receipt by the principal, and as partners are agents for the firm, and for each other, when the transaction is single, what possible inference could there be from the receipt of one, but that it was for the use and benefit of both? Repeated declarations, accompanied by the strongest corroborative acts, showed these defendants to be partners, and jointly interested in the proceeds of the transaction with the plaintiffs' company. The receipt, therefore, by Weeks of the money from the company, was susceptible of sustaining the inference that it was for the benefit of his copartner as well as himself, and threw upon the latter the burthen of establishing a different state of facts. This he did not do. In fact, as corroborative of the plaintiff's case, the sum of $12,000, part of the profits of the transaction, was actually received by Simons himself. Under this state of the proof, if believed, the receipt of either would be the receipt of both, and upon this ground a recovery against both would be right.

There was, undoubtedly, great laxity of morals, in dealing about real estate in oil sections, during the excitement consequent on its discovery. Many transactions like that under consideration have taken place, without being subject to judicial investigation, and parties have pocketed rich returns; while others have suffered disastrous diminution of their means; but the impunity with which many have speculated by unjustifiable means, and escaped a call to account to those wronged, does not impair the efficiency of the law to redress such a wrong whenever it is judicially made to appear. Hundreds have done as was done in the case before us; it had become a common thing, and men of fair standing did not hesitate to represent property as having cost sums much beyond those paid by them as inducements to enlist purchasers. This was wrong in law as well as

[Simons *v.* Vulcan Oil and Mining Co.]

morals, where there was a relation of trust and confidence, in fact or assumed, and in such cases it is the morality of the law to hold the party so representing to the position he may have occupied, or assumed to have occupied.

Seeing no errors in the record, we have nothing to do but to affirm the judgment of the court below.

Judgment affirmed.