CUBA COLONY CO. v. KIRBY.

1. CORPORATIONS—PROMOTERS—ACQUISITION OF STOCK—FRAUD.
   Where the promoters of a corporation represented that they owned a contract to purchase certain land at the price of $60,000, on which they had paid $20,000, and proposed to transfer it to the corporation for $20,000 in stock, the corporation to pay the remaining $40,000 on the contract, which proposal was accepted, and the corporation organized with a capital of $60,000, $40,000 of which was paid for the land, and $20,000 in stock to the promoters, and the price of the land was in fact $40,000, on which the promoters had paid nothing, they were not entitled to retain their stock, and were accountable to the corporation for moneys received from the sale of such stock.

2. SAME—RELIANCE ON REPRESENTATIONS.
   That some of their associates doubted the truth of the promot-

ers' statements is immaterial, where they were finally led by the promoters to resolve the doubt in their favor, and act upon the assumption that the false statements were true.

3. SAME—EQUITY—MAXIM—CLEAN HANDS—APPLICATION.

The maxim requiring a complainant in equity to come with clean hands is not applicable on the ground that after its acquisition of the land complainant corporation issued statements misrepresenting its value, since, with the promoters, who were chiefly responsible for the false statements, out of the corporation, it is not to be presumed that such statements will continue to be issued or that any further harm will come from those already issued.

4. SAME— PROMOTION EXPENSES—ALLOWANCE.

Promoters are not entitled to an allowance for promotion expenses where they represented to their associates that there was to be no such allowance.

5. SAME—CANCELLATION OF STOCK—BONA FIDE HOLDER.

Where stock in a corporation fraudulently obtained by a promoter has been transferred to a good faith holder as security for a debt, such holder has a right to retain it as such security subject to the right of the corporation to pay the debt and be subrogated to such holder's rights against the debtor.

Appeal from Calhoun; Hopkins, J. Submitted June 11, 1907. (Docket No. 79.) Decided September 20, 1907.

Bill by the Cuba Colony Company against Adolphus D. Kirby, Charles H. Howard, and Harriet E. Howard for the cancellation of certain shares of stock on the ground of fraud. From a decree for complainant, defendants appeal. Modified and affirmed.

*Francis A. Kulp* and *Stewart & Jacobs*, for complainant.

*Warren H. Woodbury* and *Lodge, Trevor & Brown*, for defendants.

MCALVAY, C. J. This is a suit in equity brought for the purpose of procuring the cancellation of certain of complainant's shares of stock held by defendants upon the ground that their issuance was procured by fraud.

Complainant obtained a decree in the circuit court. Defendants appeal.

The material facts are as follows: In 1902, one Don Carlos Batchelder and defendants Adolphus D. Kirby and Charles H. Howard obtained an option or contract for the purchase of a tract of land in Cuba. They were to pay for this land the sum of $40,000. When they secured this option it was their plan to promote a company to whom it should be transferred. To enable them to make said transfer at an advanced price they had said contract of sale so drawn that it appeared that the purchase price was $60,000, of which $20,000 had been paid; whereas nothing had been paid and the purchase price was, as above stated, $40,000. They then returned to their home in this State and induced several gentlemen to unite with them in the formation of a corporation for the purchase of said land, representing to them that it was of great value; that they would turn it over to the corporation at what it cost, which was $60,000; that they had already advanced $20,000 in cash toward its payment, for which they would take stock in the corporation to be formed. Accordingly, a limited partnership association was formed, called the Cuba Colony Company, Limited. Its capital stock was $65,000, of which amount Batchelder, Howard, and Kirby subscribed for $20,000, and their associates $45,000. The $45,000 subscribed by said associates was paid in cash. The $20,000 subscribed by Batchelder, Howard, and Kirby was never paid, otherwise than by the relinquishment of their interest in said option or contract. Soon after its organization, said Cuba Colony Company, Limited, acquired title to the Cuba property, in accordance with the scheme of its promoters. Subsequently these same parties organized an association, called the Cuban Fruit Company, Limited, for the purpose of developing a certain portion of the property. They allotted the stock in this latter company to themselves in the same proportion as they held the stock of the Cuba Colony Company, Limited.

In 1904 they made a plan for the organization of a new corporation which should succeed to all the rights of the two former associations, and to receive its stock in exchange for the stock formerly held by them. In accordance with this plan, the complainant corporation, the Cuba Colony Company, was organized. The new corporation, it is to be inferred, succeeded to all the rights of the two old ones. All the stockholders in the old companies surrendered their stock, and, with the exception of Batchelder, defendants Kirby and the two Howards (defendant Harriet E. Howard holds as security certain stock assigned her by her son, defendant Charles H. Howard), they received stock in the new corporation in exchange therefor. At this time knowledge of the actual cost of said property was acquired, and, therefore, the corporation refused to issue stock to defendants and to Batchelder. Soon thereafter this bill was filed. Batchelder is not made a party thereto, because he relinquished his stock. The circuit court rendered a decree canceling the stock in the names of Charles H. Howard, Harriet E. Howard, and Adolphus D. Kirby, and compelling the latter to repay the sum of $3,000 which he had obtained by selling a portion of his stock.

Defendants ask us to reverse that decree for several reasons: -

*First.* They urge that Batchelder, Kirby, and Howard occupied no fiduciary relation toward complainant when they purchased this property, and, therefore, complainant is not entitled to relief. It may be conceded that, at the time the purchase was made, there was no such fiduciary relation; but complainant's right to relief does not depend upon the existence of the relation at that time. A fiduciary relation did exist at the time the corporation was formed and the property transferred. At that time Batchelder, Kirby, and Howard were promoters of the corporation, and towards it they were bound to act in good faith. The law governing this case is, in our judgment, correctly stated in *Lydney & Wigpool Iron Ore*

*Co.* v. *Bird,* L. R. 33 Ch. Div. 85. The material facts in that case differ from the facts in this case in no particular favorable to defendants. We quote from that opinion. (The reader should understand that the defendant James Bird referred to in said opinion had done precisely what the promotors in the case at bar had done.)

" It is not correct to say that James Bird was the agent of the company when it did not exist; nor is it much less objectionable to talk of his being in a fiduciary relation to the company before the company had any existence. Moreover, to say that James Bird was a promoter of the company and therefore liable to account to it is calculated to mislead, for the word ' promoter' is ambiguous and it is necessary to ascertain in each case what the so-called promoter really did before his legal liabilities can be accurately ascertained. In every case it is better to look at the facts and ascertain and describe them as they are. In the present case James Bird procured the company to be formed and to be managed in such a way as to transfer from the moneys of the company to himself the sum of £10,800 without informing the company of that fact. The company were told that they had to pay £100,000 for the property but they did not know that of that sum £10,800 was to go into the pocket of the man who had got the company up and who had in fact increased the purchase money in order to get that £10,800. Under these circumstances he cannot retain the sum so got. Although not an agent of the company nor a trustee for it before its formation, the old familiar principles of the law of agency and of trusteeship had been extended and very properly extended to meet such cases; and using the word 'promoter' to describe a person acting as James Bird did, it is perfectly well settled that a promoter of a company is accountable to it for all moneys secretly obtained by him from it just as if the relationship of principal and agent or of trustee and cestui que trust had really existed between them and the company when the money was so obtained. Nor in such a case is it necessary for the company to rescind the whole transaction of which the payment by the company of the money in question is found to be part."

See, also, *Emma Silver Mining Co.* v. *Grant,* L. R. 11 Ch. Div. 918; *Erlanger* v. *Phosphate Co.,* L. R. 3

App. Cas. 1218; *Simons* v. *Mining Co.*, 61 Pa. 202; *Plaquemines Tropical Fruit Co.* v. *Buck*, 52 N. J. Eq. 219.

*Second.* Appellants insist that the false representations made by the promoters were not credited by their associates, and, therefore, complainant is not entitled to relief. We answer this contention by saying that while several of the associates did doubt the truth of these false statements, they were finally led by said promoters to resolve said doubt in their favor, and act upon the assumption that said false representation was true.

*Third.* Appellants also contend that the maxim, "He who comes into equity must come with clean hands," debars complainant from relief, because after the acquisition of the Cuban property both it and its successors issued statements misrepresenting its value. Now that the promoters—who were largely responsible for the issuance of these false statements—have no longer any relation to the corporation, we do not believe that such statements will continue to be issued or that harm will come from those that have been issued. It is not to be assumed, therefore, that the decree in this case will be so used as to enable complainant to perpetrate a fraud similar in kind to that of which it complains. Under these circumstances the maxim relied upon by the defendants does not apply.

*Fourth.* It is urged that in any event some allowance should be made to the defendants for promotion expenses. In cases somewhat similar to this such allowance has been made. See *Emma Silver Mining Co.* v. *Grant*, L. R. 11 Ch. Div. 918; *Lyndey & Wigpool Iron Ore Co.* v. *Bird*, L. R. 33 Ch. Div. 85. The case at bar is, however, to be distinguished from those cases by this important circumstance not heretofore alluded to, viz., the promoters in this case represented to their associates— and their associates believed that representation—that there was to be no allowance for promotion expenses. Under these circumstances they are not entitled to them.

*Fifth.* It is contended that defendant Harriet E.

Howard was a bona fide holder of the stock standing in her name and that that portion of the decree cancelling it is erroneous. This stock is held by Mrs. Howard as collateral security for an indebtedness of $1,475 owing her by her son, defendant Charles H. Howard. It is established by the testimony that Mrs. Howard had no knowledge of the fraudulent conduct of her son and took this stock in good faith. It is insisted, however, that inasmuch as the son was her agent, his knowledge will be imputed to her. In making the arrangement whereby this stock was taken as security, the son was not the mother's agent. Then he was acting for himself. His knowledge would not be imputed to her.

It is also insisted that Mrs. Howard is not entitled to hold this stock, because both she and her son in their testimony expressed confidence that the indebtedness secured thereby would be paid in any event. This is an argument utterly unsound. Mrs. Howard holds this stock legally as security for the payment of said indebtedness. To take it from her lessens the certainty of payment, impairs her security and deprives her of valuable property rights. She has, therefore, a right to continue to hold it. The decree of the circuit court must be so modified as to protect that right. It should at the same time give complainant the right to pay said indebtedness and cancel said stock, and, in case of said payment, to recover the amount thereof from defendant Charles H. Howard. As thus modified, the decree should be affirmed, with costs against defendants Kirby and Charles H. Howard. Defendant Harriet E. Howard is entitled to costs in both courts.

CARPENTER, GRANT, HOOKER, and MOORE, JJ., concurred.