W. A. COOK ET AL. *v.* SOUTHERN COLUMBIAN CLIMBER CO.

CORPORATIONS. *Promoters. Fraud. Profits.*

> If the promoters of a corporation procure subscriptions to its capital. stock by falsely representing that the cost of property which the corporation was to acquire was largely in excess of its real cost, and conceal the fact that they were to have the excess as commissions on the sale to the company, they are liable to the corporation for the profits so made on a sale to it for the larger sum.

FROM the chancery court, second district of Hinds county. HON. H. C. CONN, Chancellor.

The facts are sufficiently stated in the opinion of the court.

*W. Calvin Wells*, for appellants Cook, Wardlaw and Patrick.

It cannot be denied that the property, the lifting jack or right to sell it in the ten states, was largely worth more than $9,000, the price paid for it by the corporation; nor can it be denied that Cox, the owner, contracted with appellant Cook to give him one-half the price for which the property was sold long before the organization of the corporation was contemplated, and when, of course, Cook could not have been a promoter. Nor is there any pretense that the corporation did not acquire everything for which it contracted. The only pretense of fraud is that appellants kept as a secret the amount of commissions which Cox was to pay upon sale of the lifting jack. What had appellees to do with this? Cook and Wardlaw did not occupy a fiduciary relation to the company, were not promoters of the corporation in the legal sense, or in any sense which imposed on them the duty of informing the subscribers

to the capital stock of the company about their private business affairs. The word promoter, as applied to corporations, had its origin in the methods by which joint stock companies were formed in England, where, by law, they were declared partnerships. Subsequently, when the era of railroad building began in that country, the business of promoting an organization of such companies assumed definite form. The promoters introduced the enterprise to the notice of persons of wealth in the locality through which the line of road was to run, etc. This has no resemblance to our method of organizing corporations, and, while the word "promoter" has been found to have its uses in our jurisprudence, yet we use it in a much more restricted sense than do the English lawyers and judges, and we must, therefore, read English reports and decisions with this distinction in mind, or else we will be badly misled by them. It will be noted, too, that almost all original precedent on the subject are decisions of English courts. *St. Louis, Fort Scott & W. R. R. Co.* v. *Tiernan*, 37 Kan., 360.

Wardlaw was not a promoter, even in the English sense, nor is it disclosed by the evidence in what particular Cook stood in fiduciary relationship to the corporation. The court will notice that Cox, the owner of the lifting jack, fixed the price at $9,-000 himself, and the evidence shows that the property was worth largely more than that sum. *Pulsford* v. *Richards*, 19 Eng. L. & E. R., 393. Not only did Cook and Wardlaw not buy at a low price, and then advance the price and falsely represent that they were selling it at cost, but, on the contrary, Cook induced the owner, Cox, to reduce the price from $15,000 to $9,000, and the property was well worth more than the larger sum.

The following authorities show that when the contract under which the profits accrue was made, before the organization of the corporation was contemplated, the company cannot recover: *Lady Well Mining Co.* v. *Brooks*, 17 Am. & Eng. Corp. Cases, 22, 30; *Densmore* v. *Densmore*, 64 Pa. St., 43; *McElheny* v.

*The Hubert Oil Co.*, 61 Pa. St., 188; *Burbanks* v. *Dennis*, 44 Am. & Eng. Corp. Cases, 680; *Albion St. Co.* v. *Martin*, 1 Ch. Div., 580; *Central Land Co.* v. *Obenchain*, 92 Va., 142; *Howell* v. *Budd*, 91 Cal., 342; *Davis & Rankin* v. *Creamery Assn.*, 63 Mo. App., 487; *Re Hess Mfg. Co.*, Genl. Dig. Am. & Eng., vol. 9, 685.

*Williamson & Potter* for appellants, Mimms, Powell & Powell.

J. M. Powell paid two hundred dollars, and is entitled to stock in the company, and the court below erred in not having so decreed. Mimms' subscription was induced by a fraud, and it was error in the court below to require him to pay his subscription. Stock in a corporation subscribed for by a person who relies on false representations by a promoter, cannot be collected by the corporation. 51 Miss., 832; 53 Miss., 658.

Mrs. Powell should not have been required to pay for the subscription in her name, because she never made the subscription. Her name was signed to the paper, at the instance of Cook & Wardlaw, by her husband, and neither of the three had authority to sign her name.

*Brame & Alexander*, for appellees.

The undisputed facts are that one Cox was the owner of a right to a patented invention known as the Columbian Climber, an improvement on lifting jacks, for quite a number of states. Wishing to sell state rights, he entered into a contract with W. A. Cook, by which the latter was given the right to sell for him state rights. Cook thereupon, with the approval and consent of Cox, gave an equal share and benefit in his contract to Wardlaw, and Cook and Wardlaw were to have fifty per centum of the price realized for the state rights. Cox was willing to accept forty-five hundred dollars for ten of the states—that is to say, Cook and Wardlaw could effect a sale of the ten states for nine thousand dollars, and retain for themselves all over

the forty-five hundred dollars. Cook and Wardlaw were brothers-in-law, both men of business experience and standing, living in Utica. This being the contract, Cook and Wardlaw set about to make the sale, and, in order to accomplish it, planned to get their neighbors, friends and business acquaintances in Utica to join with them in the purchase, intending to organize the purchasers into a corporation. But as it takes time to organize a corporation, the plan for purchasing the rights was pushed without waiting for the organization of the corporation. In order the better to induce others to purchase and insure getting the requisite amount of purchase money or stock subscribed, Cook and Wardlaw secured the help of W. B. Powell, who seems to have had a turn for soliciting, and agreed with him that he should have one thousand dollars of stock in the intended corporation, to pay him for his services in procuring subscribers.

They, however, did not let Powell know that they were to get half of the total subscription of $9,000, but led him to believe that he was being taken into the deal on the same footing as themselves, and that each was to have $1,000 of stock, or, as Powell puts it, Cook and Wardlaw deceived him, in that they did not let him in on the ground floor of the enterprise. All the same, Powell worked assiduously, and the efforts of Wardlaw, Cook and Powell were successful, and subscriptions to the amount of $9,000 were secured. Cox himself was a stranger, and solicited no one. Neither Cook, Wardlaw nor their trusted assistant, Powell, disclosed to anyone their agency or the fact that they were making a dollar out of the deal. It is admitted that a subscription list was procured, and that Wardlaw headed the list by a subscription for $1,000, and that Cook signed second on the list for a like amount, and that Powell, in the name of his wife, followed for $500. The subscription, as will be seen, was a promise to pay the amount opposite their names, and there was nothing conditional or qualified about any of the subscriptions, so far as the list showed. The list having been completed, a meeting of the purchasers or shareholders

was had, and the answer of Cook avers that Cox was present; and, as if by accident, suggested that Wardlaw be custodian of checks to be paid by purchasers. Wardlaw presided over the meeting, and it was agreed that he should act as trustee or custodian, and that each purchaser should immediately pay him the amount of their subscription, and when paid the deed should be delivered by Cox. Thereupon the subscribers proceeded to pay in their good money, but, as was understood by Wardlaw beforehand, the check which was brought up by Powell was returned to him, and Wardlaw and Cook themselves gave no check at all, but considered their subscription as part of the profit they were to make.

As we have seen, there is little or no controversy as to facts, and there cannot be any as to law. Cook and Wardlaw were clearly promoters of the corporation. The word "promoter," under the English corporation act, has a somewhat technical signification, but with us it is not a legal business term. See *Yale Gas Stove Co.* v. *Wilcox*, 64 Conn., 101, s.c. 47 Am. & Eng. Corp. Cases, 647. As such promoters they are liable for the profits made in the enterprise. See 1 Morawetz on Private Corps., sec. 293; 1 Thomp. Com. on Corps., secs. 456, 457, *et seq.;* Thomp. on Liability of Officers and Agents of Corps., p. 172; and see, especially, p. 196, where the rule is stated to be elementary. Also see note in same book, p. 218, on Liability of Promoters to the Company. *Yale Gas Stove Co.* v. *Wilcox*, *supra;* *South Joplin Land Co.* v. *Case*, 104 Mo., 572, s.c. 38 Am. & Eng. Corp. Cases, 333; *Pittsburg Mining Co.* v. *Spooner*, 24 Am. & Eng. Corp. Cases, 149. We refer the court to the following additional authorities: *Getty* v. *Derlin*, 70 N. Y., 504, s.c. 54 N. Y., 403.

Argued orally by *W. Calvin Wells* and *C. M. Williamson*, for appellants, and by *C. H. Alexander*, for appellee.

STOCKDALE, J., delivered the opinion of the court.

The bill of complaint in this cause was filed by eleven mem-

bers of the Columbian Climber Company, a corporation under the laws of the State of Mississippi, domiciled at Utica, Miss., claiming to be the majority of said company, with the right to control it, against W. A. Cook and Z. Wardlaw, two other members of said company, as defendants, against whom relief is asked, and joining as defendants, in order that the right of all parties may be adjusted, M. F. Powell, G. W. Mimms, Jr., J. M. Powell, and W. G. Patrick. The scope and purpose of the bill is to recover from said defendants, Cook and Wardlaw, certain moneys alleged to have been wrongfully retained by them, and to recover the same into the treasury of said company.

The case as made by the bill of complaint is that the said defendants, Cook and Wardlaw, promoted a company, and induced complainants to embark therein, for the purchase of certain patents on a device or instrument named the "Columbian Climber"—something like a lifting jack; that said Cook and Wardlaw represented to complainants that the right to sell the instrument—the climber or lifting jack—in the nine states of New Jersey, Delaware, Virginia, West Virginia, North Carolina, South Carolina, Georgia, Florida, and the District of Columbia could be bought from Melvin Cox, a citizen of Illinois, then in Utica, for $9,000, and no less, and Cox joined them in that declaration, and aided in forming the company, whereas, in point of fact, the said patent conferring the right to sell the said instrument in said territory, cost only $4,500, and the agreement between Cox and the defendants, Cook and Wardlaw, at the time they were forming said company on a basis of $9,000, that Cox was to get $4,500, and no more, for said patents; that said Cook and Wardlaw represented to complainants the price for said patents was $15,000, but that they had induced him, by their efforts, to come down to $9,000; that complainants subscribed to and took stock in said company upon the belief, based upon the representations to that effect by Cook and Wardlaw, that the real price to be paid Cox was

$9,000; that $9,000 was subscribed and placed in the hands of Wardlaw to pay to and settle with Cox; and that Wardlaw paid Cox $4,500, and he and Cook kept the balance, and divided it between them.

The said defendants—Cook and Wardlaw—filed their answer, denying positively that they were promoters of said company, and denying that they deceived or defrauded complainants, or any of them; and state and set up that, long before the promotion of the Columbian Climber Company was thought of, Cook had agreed and bargained with Cox that he (Cook) should help Cox sell the territorial right to sell said lifting jack, and have for his services fifty per cent. of all sales; that Mississippi and Arkansas had been sold on that basis, and he had the right to sell the said states and the District of Columbia for $9,000, and have half the sum for his services, and that he took Wardlaw in with him, and promised to divide equally with him, and upon that basis they went to work to raise said company; they did not let anyone know that Cox was to get finally only $4,500 and they the balance; but they represented to complainants that Cox was to get the whole $9,000, and did get the whole $9,000, but did, as he had agreed to do, turn over to Cook all over $4,500, as commissions.

The testimony in the case is voluminous for both parties, presenting some contradictory testimony, but no material differences as to main facts. The dispute is mainly as to the attitude of the said defendants, Cook and Wardlaw. Complainants contend that the said defendants, knowing that Cox was to get only $4,500 for the patents, and having represented to complainants that they, the said defendants, had induced said Cox to lower his price from $15,000 to $9,000 in the interest of the buyers, and that complainants depended upon them to form said company on a true basis, and that complainants would not have subscribed had they known the truth (that Cox was to have but half the amount, and Cook and Wardlaw the other half), they (Cook and Wardlaw) having themselves subscribed on the list

that was carried around $1,000 each; therefore defendants were promoters of the conspiracy, and deceived and defrauded complainants, and they are entitled to relief. Defendants' contention is that the price was, in fact, $9,000, and they paid over to Cox $9,000, and Cox gave them back $4,500 as commissions, and that they occupied no fiduciary capacity, and are not liable to deliver up the profits they made out of the transaction.

There is an agreement of counsel in the record to the effect that Melvin Cox, the vendor of the patents, would, if present, swear that he would not have taken less than $9,000 for those states and District of Columbia. That, if true, involves the anomalous piece of history that a man would come from Illinois to Mississippi to sell patent rights, and would absolutely refuse to take any less than $9,000 for certain territory, but would agree to give an agent $4,500 to sell it for $9,000, leaving to himself $4,500; that he would refuse to take $4,500 cash for a piece of property, while he was willing to give fifty per cent. to anyone who would sell it for $9,000, with all the risks intervening as to whether it could be sold or not. What reason could have induced Cox to so act is not disclosed. It could not have been that he wanted it to appear to the people that he had sold out for a larger price. He could have accomplished that by doing what he did do finally—inserted in the deed conveying these rights to the Columbian Climber Company, $30,000 as the consideration, and acknowledge the receipt of that amount. If that were not true, and Cox would have taken $4,500 for the said territory, then the company could have been formed on that basis, without concealment of any facts; and there could be no other reason for representing to the subscribers that the territory would cost $9,000 than that Cook and Wardlaw might get out of the other subscribers, without consideration, $4,500 in stock and money over and above the real cost of the territory, as profit to themselves for promoting the company. It depends upon the facts in proof whether the defendants, Cook

and Wardlaw, were in the attitude of promoters of the company, or were honestly selling what they had the right to sell without deception or fraud upon subscribers. The chancellor seems to have made careful examination of the case, and weighed the testimony, and rendered a decree, after due consideration, granting relief to complainants, and requiring defendants, Cook and Wardlaw, to account for and pay into the treasury of the Columbian Climber Company the profits they realized out of the venture; and his judgment is entitled to weight. We do not find in this record any sufficient reason for disturbing the decree of the court below, except as to G. W. Mimms, Jr., and M. F. Powell. G. W. Mimms, Jr., bargained with defendant, Cook, for his stock, and paid Cook for it in lands. He does not appear to have aided in promoting the company, and does not demand any stock of the company. M. F. Powell did not subscribe for the stock herself. Her husband put her name on the list, to forward the scheme of getting up the company. She paid nothing for it, did not expect to pay anything for it, and does not claim it. The stock was to be given to her by Cook and Wardlaw. She had no part in getting up the company, and did not assist in defrauding anyone. The bill asks no relief against G. W. Mimms, Jr., nor M. F. Powell, but makes them parties, as it declares, simply that their rights may be adjusted. The decree of the court below is affirmed, except as to G. W. Mimms, Jr., and M. F. Powell, and the issuance of stock of said company to either of them is denied, and, as to them, the bill is dismissed, and the cause remanded, to be proceeded with in accordance with the views expressed in this opinion; the costs of this appeal in this court to be paid by appellants, except the costs accrued here on account of G. W. Mimms, Jr., and M. F. Powell, which will be taxed on appellees.