### TRAVIS v. TRAVIS et al.

(Supreme Court, Appellate Division, Second Department. October 7, 1910.)

CORPORATIONS (§ 99*)—PROMOTERS—LIABILITY.

> Where a promoter of a corporation formed to purchase real estate falsely represented the price for which the property could be acquired, so that the purchasers of stock paid for the property, and the promoter paid nothing for his stock, there was, as between him and the corporation, no consideration for his stock, and it was properly canceled as void, either in his hands or in the hands of one claiming under him.
>
> [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 444–446; Dec. Dig. § 99.*]

Appeal from Special Term, Westchester County.

Action by John L. Travis against Frank H. Travis and others. From a judgment for certain defendants, plaintiff appeals. Affirmed.

Argued before WOODWARD, JENKS, THOMAS, RICH, and CARR, JJ.

Joseph M. Williams, for appellant.
Leonard J. Reynolds, for respondents.

CARR, J. One Frank Travis was engaged in the business of real estate brokerage in the firm of John L. Travis & Son in the year 1906. He knew of some real property which could be purchased for $9,000, subject to a mortgage of $4,500. If he could get a purchaser for the property, the vendors' broker was to divide with him equally the commissions to be paid by the vendors, amounting to $500. Desiring to effect a sale of this property, he went to some of his relatives and procured the formation of a corporation to buy the property. He represented to the parties who entered into the agreement to form the corporation that the lowest price at which the property could be bought was the sum of $10,000. The agreement was that four persons should each contribute $1,500 to buy the property, and receive in return, each respectively, 15 shares of the stock of the purchasing corporation. He was to be one of the four contributors to the purchase price, and to stand on an equal plane with his fellows. The company was formed accordingly. He was elected its treasurer, and each of his three associates paid in their respective contributions of $1,500 each, and received their proportions of the capital stock, 15 shares respectively. A certificate for 15 shares was likewise issued to him. The property was purchased by the corporation in question for an assumed consideration of $10,000. It came out subsequently that the net actual consideration

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the sale did not exceed $9,000. · In other words, his associates ·con-- ·
tributed the whole amount of the purchase price, and he gave nothing. ·
Out of this $9,000 he received, without the knowledge of his associates,
the sum of $250 from the vendors' broker as a division of the broker-
age fees paid by the vendors. As the matter then stood, his associates
had paid for the whole property, and indirectly had paid his commis-
sions, and he had received 15 shares of stock in the corporation, which
are concededly of considerable value, without contributing $1 in cash.
The plaintiff, John L. Travis, is a member of the same firm of which
Frank Travis was a member. He claims that by a mutual agreement
between Frank and himself, based upon a consideration, Frank was to
hold 6 shares of the stock issued to him, under the circumstances above
related, in trust for him, John L. He brings this action to enforce the
alleged trust against both the corporation and the transferee of the
stock formerly held by Frank. The corporation defends on the ground
that Frank obtained the stock in question without consideration, and
that the certificate thereof should be canceled as null and void. The
transferee from Frank offered in court to surrender the certificate for
cancellation. Judgment was given dismissing the plaintiff's complaint.
From this judgment the plaintiff appeals.

On the face of the transaction, Frank Travis cheated his associates.
In fact, he did not contribute $1, as but $4,500 in cash was needed to
buy the property, and all of this amount was furnished by his asso-
ciates. If it can be worked out that he made any contribution for the
stock of the corporation, this contribution came necessarily from a
secret profit which he made by putting through the sale at the appar-
ent price of $10,000, and secretly receiving back the difference between
that and the true price, and, in addition, by receiving secretly a portion
of the commission of the vendors' broker. As between Frank Travis
and the corporation, there was no actual consideration for the stock
issued to him, unless the law will permit him to profit by his trickery
and gross breach of faith. That the law will not so permit him is well
settled. Duncomb v. N. Y., H. & N. R. R. Co., 84 N. Y. 190; Red-
head v. Parkway Driving Club, 148 N. Y. 471, 42 N. E. 1047. The
vice affecting the legal rights of Frank Travis in the stock so issued to
him pervades whatever rights the plaintiff has against the corporation,
under the agreement with Frank; and, so far as this action is con-
cerned, they both stand exactly in the same shoes. ·

The judgment should be affirmed, with costs. All concur.