**JARVIS et al. v. GREAT BEND OIL CO.**

No. 7013—Opinion Filed July 10, 1917.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 450.)

**Corporations—Fraud of Promoters—Action for Secret Profits—Parties Plaintiff.**

Where three of the promoters of a corporation falsely represented to their associates in the enterprise that certain property which it was desired to acquire for the proposed corporation was of the value of $25,-000, and that such sum was the "least dollar" for which it could be obtained, and thereby induced their associates to agree that the property be purchased at such price for the corporation, and to that end subscribe and pay for the shares of the capital stock of the corporation to be issued to them, and authorize the use of the funds thus raised in payment for such property, when in fact, through a secret understanding between the three promoters and the vendors of the property, only $10,000 of said funds was paid by such promoters, held, that the fraud thus practiced infringed the corporate rights of the associates of the three promoters as shareholders in the corporation, and therefore, in an action against such promoters to recover the secret profits so obtained, the corporation is the proper party plaintiff.

(Syllabus by Bleakmore, C.)

Error from District Court, Muskogee County; R. P. De Graffenreid, Judge.

Action by the Great Bend Oil Company against W. A. Jarvis, N. A. Weems, and H. C. Becker. Judgment for plaintiff, and defendants bring error Affirmed.

See, also, 49 Okla. 175, 152 Pac. 372.

Blakeney & Maxey, for plaintiffs in error.

Thomas H. Owen, Joseph G. Stone, and Alvin F. Molony, for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the court below by the Great Bend Oil Company, a corporation, as plaintiff, against W. A. Jarvis, N. A. Weems, and H. C. Becker, as defendants, to recover secret profits alleged to have been obtained by defendants as promoters of the plaintiff corporation through fraud practiced upon it by means of false representations to the other subscribers to its capital stock, inducing the purchase of an oil and gas lease with the corporate funds paid in by such subscribers at a price far in excess of its value; such excess, unknown to the other stockholders, being turned over to defendants by the vendor of such lease. The cause was referred to a referee, who reported findings of fact and conclusions of law, which were adopted and confirmed by the court and judgment rendered thereon for plaintiff.

The findings, which in the main are amply supported by the evidence, are as follows:

"I find that the Great Bend Oil Company, the plaintiff, is a corporation incorporated under the laws of the state of Oklahoma, and that its organization was completed on the 1st day of October, A. D. 1912.

"That prior to the 11th day of June, A. D. 1912, and about the 17th day of May, A. D. 1912, the defendants Jarvis, Weems, and Becker entered into an understanding and agreement with certain other persons, among whom were J. J. Heddleston, L. E. Moses, J. M. Kempler, R. G. McDougal, E. C. Briggs, I. J. Kineseder, J. P. Webber, and P. Smith, by which it was agreed and understood by all parties thereto that said persons and their associates would promote and organize a corporation for the purpose of purchasing, owning, and operating an oil and gas mining lease.

"That at the time said defendants and their associates entered into said agreement for the promotion and organization of such a corporation, no particular lease had been selected for purchase.

"That the proposed corporation was to be organized under a plan whereby one hundred thousand ($100,000.00) dollars par value of capital stock was to be issued and twenty-four thousand ($24,000.00) dollars thereof was to be offered for sale for the purpose of raising a fund to aid the corporation in prospecting upon and developing such oil and gas mining lease as might be purchased; twenty-five thousand ($25,-000.00) dollars thereof should be offered for sale, and the proceeds thereof should be used to reimburse the original subscribers for stock for moneys advanced by them for the purchase of stock.

"That the capital stock was to be issued upon the basis of four ($4.00) dollars of stock for each dollar paid into the treasury by the original subscribers, who should receive the remaining fifty-one thousand ($51,000.00) dollars of the capital stock of the company, and who were to receive, in the event that no stock should be sold, four ($4.00) dollars of capital stock for each dollar subscribed and paid in, it being the intent and plan that by means of sales of the capital stock thereafter to be made, the corporation should be provided with a working capital, the promoters and original subscribers to receive back their money invested and still retain fifty-one (51%) per cent. of the stock, which they understood would enable them to control the corporation.

"The defendant Jarvis was instructed and empowered by his associates to negotiate for the purchase of a suitable oil and gas mining lease, and, prior to the 11th day of June,

A. D. 1912, had entered into negotiations with the Doneghy Investment Company, a corporation of which one J. C. Doneghy was president, for the purchase of an oil and gas mining lease covering the north half (N. ½) of the southeast quarter (S. E. ¼) of section twenty-two (22), township twelve (12) north, range thirteen (13) east, a part of the Clay Douglass allotment, consisting of eighty (80) acres of land, more or less.

"That the said Jarvis and Weems entered into an agreement with the Doneghy Investment Company, through the said J. C. Doneghy, its president, whereby it was agreed by the said Jarvis and the said Doneghy Investment Company that the aforesaid oil and gas mining lease should be offered and priced to the defendants Jarvis and Weems and their associates for sale to the prospective corporation at a price of twenty-seven thousand ($27,000.00) dollars, and that if objection was offered to the amount at which the same was so priced, that said Doneghy Investment Company should reduce this price to the sum of twenty-five thousand ($25,000.00) dollars. And that the Doneghy Investment Company should retain out of said sum of twenty-five thousand ($25,-000.00) dollars the sum of ten thousand dollars ($10,000.00), which was the actual value of the lease, and should pay over to the defendant Jarvis and the defendant Weems all moneys collected on the sale of said oil and gas mining lease in excess of said sum of ten thousand ($10,000.00) dollars.

"That on the 11th day of June, A. D. 1912, the defendant Jarvis, with other promoters of the company, held a meeting at Muskogee with the Doneghy Investment Company, and during said day inspected the property upon which it was proposed to purchase said oil and gas mining lease.

"That at said time the said J. C. Doneghy, on behalf of the Doneghy Investment Company, offered and priced said oil and gas mining lease to the promoters of said corporation at the sum of twenty-seven thousand ($27,000.00) dollars, which price was subsequently, in pursuance of the arrangement with the defendants Jarvis and Weems, reduced to the sum of twenty-five thousand ($25,000.00) dollars, both the said J. C. Doneghy and the defendant Jarvis, informed the other promoters of the company who were present was the 'least dollar,' as they expressed it, for which said lease could be bought.

"That after inspecting the property covered by said oil and gas mining lease the promoters of the company decided to purchase the same at the sum of twenty-five thousand ($25,000.00) dollars for the corporation which they had agreed to organize and incorporate, and the Doneghy Investment Company, on said 11th day of June, entered into a contract in writing in which they agreed to convey the defendants Jarvis

and Weems, and their associates, who were not named, the said oil and gas mining lease in consideration of the sum of twenty-five thousand ($25,000) dollars.

"That on said 11th day of June, A. D. 1912, and within a few days thereafter, the following persons subscribed for the capital stock of the company upon the basis of their contributing thereto the amounts which I have here set opposite their names; that is to say:

| | |
|---|---|
| W. A. Jarvis | $2,500.00 |
| R. G. McDougal | 2,500.00 |
| E. C. Briggs | 2,500.00 |
| P. Smith | 1,000.00 |
| J. P. Webber | 1,000.00 |
| T. J. Webber | 1,000.00 |
| L. E. Moses and J. J. Heddleston | 2,000.00 |
| J. C. Becker | 1,500.00 |
| J. M. Kempler | 1,000.00 |
| C. W. Hermes | 1,000.00 |
| H. C. Becker | 2,000.00 |
| N. A. Weems | 2,000.00 |
| P. Kineseder | 2,500.00 |
| I. J. Kineseder | 2,500.00 |

"For these various subscriptions checks were drawn by the various subscribers, some of which were payable to the Doneghy Investment Company, and one, at least, of which was payable to the defendant Jarvis, and were forwarded either to the defendant Jarvis, or to the Doneghy Investment Company, and all of which, either directly, or through the defendant Jarvis, found their way to the Doneghy Investment Company and were by it applied toward the payment of the purchase price of the oil and gas mining lease, except, as hereinafter stated, the check of the defendant Jarvis for twenty-five hundred ($2,500.00) dollars, the check of the defendant Weems for two thousand ($2,000.00) dollars, and the check of the defendant Becker for two thousand ($2,-000.00) dollars were by the Doneghy Investment Company, in pursuance of the agreement theretofore had with the defendants, returned to the defendant Jarvis, who retained his own check and returned Becker's check to Becker, and returned Weems' check to Weems. The check given by J. C. Becker in the sum of one thousand ($1,000.00) dollars and C. W. Hermes in the sum of one thousand ($1,000.00) dollars were never paid. The Doneghy Investment Company received from checks delivered to it by the various subscribers to the capital stock of the company the sum of sixteen thousand five hundred ($16,500.00) dollars, less the sum of eight and 60/100 ($6.80) dollars, expense incurred by way of exchange on the collection of said checks, and said Doneghy Investment Company retained therefrom the sum of ten thousand ($10,000.00) dollars and, in accordance with its arrangement with the defendants Jarvis and Weems, on June 28, 1912, deposited in the Commercial National Bank of Muskogee, Oklahoma, to

the credit of W. A. Jarvis, the sum of six thousand four hundred ninety-one and 40/100 ($6,491.40) dollars, which was drawn out of the bank by Jarvis and a portion of which, amounting to one thousand four hundred seventy-one and 90/100 ($1,471.90) dollars, was paid by the defendant Weems, but which, in connection with other matters, constituted a payment to Weems of three thousand ($3,000.00) dollars on account of his interest in the secret profits.

"The arrangement existing between the defendants Jarvis and Weems and the Doneghy Investment Company was wholly unknown to the other promoters of the corporation and was wholly unknown to the persons who subscribed for the stock of the corporation, and was not known to any of said subscribers until subsequent to the payment for their stock and subsequent to the time of the organization of the corporation and the issue of its capital stock. The promoters of the company were unable to dispose of the capital stock of the company according to the plan which the organization of the company contemplated, and for that reason the organization of the company was delayed until the 1st day of October, 1912, at which time one hundred thousand ($100,000.00) dollars of capital stock of the company was issued and each sucscriber thereof received four ($4.00) dollars of the capital stock of the company for each dollar subscribed and paid in by him; the subscribers Hermes and J. C. Becker having failed to pay the checks for one thousand ($1,000.00) dollars each, given by them, the defendant Jarvis claimed the shares of the company allotted to them on account of their subscriptions, and such capital stock, amounting to eight thousand ($8,000.00) dollars, par value, was issued to the defendant Jarvis. The defendant Jarvis also received ten thousand ($10,000.00) dollars, par value; of the capital stock on account of his subscriptions of twenty-five hundred ($2,500.00) dollars, the defendant Weems eight thousand ($8,000.00) dollars, par value, of the capital stock on account of his subscription, and the defendant H. C. Becker received eight thousand ($8,000.00) dollars, par value, of the capital stock of the company on account of his subscription, none of said defendants paying any consideration therefor.

"I am unable to find that the defendant Becker was fully aware of the secret arrangements existing between the defendants Jarvis and Weems and the Doneghy Investment Company, except to the extent that he understood that there was to be a secret profit, and that he was to share in the secret profits to the extent of his subscription to the capital stock, in the sum of two thousand ($2,000.00) dollars, and was to receive capital stock of the company to the extent of that amount without consideration as his part of the profits.

"Subsequent to the organization of the prospective company, which was organized as the Great Bend Oil Company, and which is the plaintiff herein, and prior to the commencement of this action, defendant Jarvis sold and transferred eight thousand ($8,000.00) dollars, par value, of the stock so issued to him, the same being the stock issued to him on account of the one thousand ($1,000.00) dollar subscriptions of C. W. Hermes and J. C. Becker, and received therefor the sum of two thousand ($2,000.00) dollars.

"On the 22d day of November, the Doneghy Investment Company conveyed to the Great Bend Oil Company, pursuant to the previous agreement and upon consideration of the moneys paid to it by the several subscribers for the capital stock of the company, the oil and gas mining lease hereinbefore referred to.

"Prior to December 4, 1912, the defendants Briggs and McDougal, subscribers to the capital stock of the company, had learned of the secret profits made by the defendants, and were demanding a restitution thereof. On the 4th day of December, A. D. 1912, the defendants Weems and Becker, in compliance with said demand, paid to said Briggs and McDougal the sum of thirty-two hundred ($3,200.00) dollars, which sum was paid by means of a loan obtained through the First National Bank of Muskogee, upon a note signed by the defendants Jarvis and Weems, and indorsed by Briggs and McDougal, and which, it is stipulated in the record in this cause, shall be treated as a payment and restitution made to the corporation to that extent upon condition that said defendants, prior to the filing of exceptions, if any, to this report, shall deliver said note, properly canceled, to the referee.

"On October 1, 1912, pursuant to a notice given to the subscribers to the capital stock, the first meeting of the stockholders of the Great Bend Oil Company was held at Muskogee; at that meeting there were present the defendant Jarvis, the defendant Weems, J. P. Webber, E. C. Briggs, R. G. McDougal, and I. K. Kineseder, and at said meeting the board of directors was elected, consisting of E C. Briggs, I. J. Kineseder, J. P Webber, W. A. Jarvis, and N. A. Weems. The minutes of that meeting were not produced before the referee, nor were the minutes of the directors' meeting held subsequent thereto produced before the referee, but evidence was offered tending to show that they had been lost or mislaid, and secondary evidence was offered as to the proceedings had at said stockholders' meeting and at said directors' meeting. I am not fully satisfied with the evidence as to the exact nature of the transactions had at those meetings, but I am inclined to believe and to find and I do find that a resolution was adopted at the meeting of the stockholders setting forth that J. P. Webber, on

behalf of himself and his associates, had offered and presented for sale to the corporation an oil and gas mining lease (which was the oil and gas mining lease involved in the negotiations with the Doneghy Investment Company) and offered to take the sum of one hundred thousand ($100,000.00) dollars therefor in stock of the company, said stock to be issued to the said J. P. Webber and his associates, as their interests appeared in said lease contract, and resolving that the company accept the same and issue its stock therefor, and that subsequently, at meeting of the board of directors, a resolution was adopted, setting forth that:

"'Whereas, J. P. Webber, on behalf of himself and his associates being the owners of a contract for an oil and gas lease (meaning the same premises), had offered and presented the same for sale to the corporation, and offered to take the sum of one hundred thousand ($100,000.00) dollars therefor in stock of said company, said stock to be issued to the said J. P. Webber and his associates as their interests appeared in the lease contract;_and

"'That whereas, it appeared to the directors of the company that said property was desirable and necessary for the purpose of said company, and reasonably worth the price thereof, and the price asked and demanded by the said J. P. Webber and his associates, and the same would be a good purchase for said company at said price; and

"'Whereas, the stockholders of said company, in meeting assembled, had asked and directed the board of directors to accept said proposition and order stock issued to the said J. P. Webber and his associates, as aforesaid; and

"'Whereas, the said oil and gas mining lease was necessary for the prosecution and operation of the company's business, and believing it to be to the best interests of said company to buy and purchase the same, and being so directed by the stockholders' meeting:

"'Be it Resolved, that the Great Bend Oil Company, a corporation, does hereby accept the proposition of said J. P. Webber and associates, and does purchase and buy the said oil and gas lease on the property above described for one hundred thousand ($100,000.00) dollars, to be paid for in stock of the company, of the par value thereof, and that the officers of this company, to wit, the president and secretary, are directed to issue stock in the said sum of the said parties, as their interest may appear.'

"I am unable to find that any of the subscribers to the capital stock of the company, except those who were presnt at the first meeting of the stockholders, had any knowledge or notice that said lease would be offered for sale to the company by the said J. P. Webber, and I am unable to find that said J. P. Webber had any authority from any person or persons associated with him other than those present at said meeting to make any offer with respect to said oil and gas mining lease.

"That the defendant Jarvis still owns and holds ten thousand (10,000) shares, par value, of the capital stock of the company, standing in his name on the corporate books of the company; the defendant Weems eight thousand (8,000) shares thereof, and the defendant Becker eight thousand (8,000).

"The defendants requested the referee to make the following finding of fact:

"'That during the early part of May, 1912, the defendants and certain other parties contemplated the purchase of an oil lease and the forming of a corporation, and discussed it, and it was generally understood between all of the parties that when such lease should be obtained that these parties, as promoters, should purchase the said lease and pay the purchase price thereof and turn the same into such corporation organized and in exchange for such lease take and receive the entire capital stock of the corporation; and that on or about the 17th day of May, 1912, the said promoters all agreed to purchase a certain lease from the Doneghy Investment Company, and, for such purpose requested Mr. Doneghy, president of the company, to name a price for such lease. That previous thereto the defendant Jarvis, with the knowledge of the other defendants herein, had entered into an agreement with Doneghy by which Doneghy should take $10,000 for the lease, and should price the same to the associate promoters at $25,000, and should give to the defendants the difference between the $10,000 and the price obtained. That the promoters went out and examined the lease and orally agreed to purchase the same, and the said Doneghy Investment Company made a contract in writing with W. A. Jarvis and his associates, which included all of the parties that were then intending to organize such corporation, by which the said promoters agreed to pay $25,000 for the lease. That thereafter the said promoters each paid in the proportions shown by the petition the sum of $25,000, but that the check given by the defendants was returned to them, and by this transaction the defendants had made their secret profit of $15,000—$8,500 was in stock of the company and $6,500 was in moneys of the company, and that after the purchase price of the lease was paid, on or about the 1st of October, 1912, the parties who paid the same, being termed "promoters" as aforesaid, organized the Great Bend Oil Company, a corporation, and at a meeting of the stockholders of the said corporation a resolution was adopted directing the officers and directors of the corporation to procure a title to the lease in proper form, and to deliver to the parties who had purchased the lease the entire cap-

ital stock of the corporation in such proportion as their interests might appear, meaning thereby, in the proportion in which the payment had been made by each of said parties should bear to the $25,000, the cost of the lease, and immediately thereafter a directors' meeting was held and the resolution adopted taking the said lease and directing the officers of the said corporation to procure the same in legal form, and in pursuance of these resolutions the lease was made in proper form from the Doneghy Investment Company to the Great Bend Oil Company, and the capital stock was issued and delivered to the parties making the payment in the proportion of $4 of the capital stock to $1 paid on such lease.'

"Upon consideration thereof, the referee declined to find the facts according to said request, and to the refusal of the referee to make such finding in accordance with said request, and to the facts as found by the referee, the defendants ask and are allowed their several exceptions."

The principal, if not sole, ground urged for reversal of the judgment is that the loss suffered by reason of the purchase of the lease in question and the other matters complained of was occasioned by the subordinate fraud of defendants perpetrated upon their associates in a transaction by which they acquired such lease as individuals prior to the organization of the plaintiff corporation, and the transfer of the same to it in exchange for its capital stock, and therefore that whatever there was of fraud, deceit, or misleading did not relate to the incorporation, or to the transfer of the lease to it, and was in no sense an injury to the plaintiff giving rise to a right of action in it. As sustaining this contention defendants rely upon Spaulding v. North Milwaukee Townsite, 106 Wis. 481, 81 N. W. 1064, Getty v. Devlin, 54 N. Y. 403, Old Dominion Copper Co. v. Lewisohn, 210 U. S. 206, 28 Sup. Ct. 634, 52 L. Ed. 1025, and other cases.

We deem it unnecessary to comment on the rule announced in the foregoing decisions, save to state that it appears inapplicable to the facts in the case. The referee specifically finds:

"That on the 11th day of June, A. D. 1912, the defendant Jarvis, with other promoters of the company, held a meeting at Muskogee with the Doneghy Investment Company, and during said day inspected the property upon which it was proposed to purchase said oil and gas mining lease; * * * that after inspecting the property covered by said oil and gas mining lease the promoters of the company decided to purchase the same at the sum of twenty-five thousand ($25,000) dollars for the corporation which they had agreed to organize and incorporate, and

the Doneghy Investment Company, on said 11th day of June, entered into a contract in writing in which they agreed to convey the defendants Jarvis and Weems; and their associates, who were not named, the said oil and gas mining lease in consideration of the sum of twenty-five thousand ($25,000) dollars."

The evidence in no respect discloses an intent on the part of the associates of defendants who participated in the organization and subscribed for the stock of the plaintiff corporation to at any time become individually interested in the purchase of the lease in question. On the other hand, it appears that it was their purpose at all times to form a corporation, and as shareholders therein engage in the oil and gas business in this state. There is no testimony which even tends to show that they ever, individually or collectively, contemplated the purchase of such lease with a view to its sale to a corporation subsequently to be organized by them. At the instance of defendants these persons looked over the property, the lease of which it was proposed should be acquired by the corporation, and relying upon the false representations of defendants as to its value, and that $25,000 was the "least dollar" for which it could be obtained, were induced thereby to agree that it should be purchased for the proposed corporation (the plaintiff here), and to that end subscribed and paid for the shares of stock in such corporation, which were subsequently issued to them, and authorized the use of such funds in the payment of the purchase price of said lease, without knowledge on their part of the fraudulent scheme by which a large portion thereof was to find its way into the pockets of defendants.

The conduct of defendants ill accords with the fiduciary relation they occupied toward the corporation in process of promotion and the trust reposed in them by their associates in that project. That they practiced an injurious fraud they tacitly admit, and here question only who suffered thereby. In our opinion it was undoubtedly the plaintiff corporation. In Thompson on Corporations (2 Ed.) White's Supplement, vol. 8, § 103, it is stated:

"The promoters of a corporation sustain a fiduciary relation to the stockholders of the corporation, which is somewhat analogous to that of an agent, toward his principal or preferably that of a trustee his cestui que trust, and the utmost good faith is required of them in their dealings with the corporation. This duty of good faith continues to the completion of the plan for organization of the corporation. The promoter may deal with the corporation only when

he deals fairly and after a full disclosure of all 'the material facts touching his relation to the corporation and the subject of the transaction."

Again it is said by the same author (volume 1, § 110):

"The corporation is not without recourse in case of the fraudulent sale of property to it by the promoters, or in case of the perpetration of a fraud upon the rights of the subscribers as a whole. Where the injury is to the stockholders collectively it is said to be an injury to the corporation. And where the promoters are guilty of fraud in the matter of taking or distributing shares of stock, the corporation may compel them to account. Thus, where promoters, who were originally the sole stockholders, voted to issue stock to themselves in payment for a conveyance of land to the corporation, it was held that they were guilty of fraud, and that the corporation, without returning the land, could maintain an action for the recovery of such stock or damages for its value. The fact that the fraudulent sale of land by a promoter to a corporation· was not fraudulent as to some of the stockholders was held to be no bar to an action by the corporation. So the fact that some of the stockholders and directors knew that a promoter was making a secret profit in the sale of land to the corporation was held to be no defense in an action against him for an accounting by the corporation. 'If the promoters are guilty of any misrepresentation of facts, or suppression of the truth in relation to the character and value of the property, or their personal interest in the proposed sale, the company will be entitled to set aside the action, or recover compensation for any loss which it has suffered.' The corporation may recover secret profits from a promoter, although the contract out of which such profits were made cannot be rescinded."

And again in section 111:

"Recovery of secret profits has been resisted in many cases because the action was brought by the corporation. In such cases the claim was made that the shareholders or original subscribers should be complainants, as the injury was to them individually. But it has been consistently held that the right of action was in the corporation. The reasons for this are given by Mr. Morawetz thus: 'While the contract for the purchase of the property was nominally in force from the time of its approval by the board of directors, yet it really took effect only after the stockholders had taken their shares. It then became binding upon all the shareholders collectively, or in other words, on the company. The fraud really consisted in inducing the shareholders to enter into this contract in their collective capacity, and in using the funds belonging to the shareholders collectively in paying the purchase price. It is evident, therefore, that the injury to the shareholders was an injury to their collective or corporate interests, and that the company was the proper complainant. The rule is that where the collective or corporate rights of the shareholders have been infringed, the company is the proper party plaintiff.' The California court has expressly held that the corporation is the proper party plaintiff in an action against promoters to recover secret profits or to set aside or cancel their fraudulent acts; and the principle is established by other cases. So, an action will lie in the name of a corporation against promoters who are wrongdoers to compel an accounting without reference as to how the fruit of their fraud may have been divided."

Relative to the liability of a promoter it is said in Elliott on Contracts, § 533:

"If he is guilty of a misrepresentation of facts or repression of truth in relation to his personal interest in the proposed purchase, the corporation is entitled to set aside the transaction or recover compensation for any loss it has suffered."

See, also, Pittsburg Mining Co. v. Spooner, 74 Wis. 307, 42 N. W. 259, 17 Am. St. Rep. 149; Cook v. Southern Columbian Climber Co., 75 Miss. 121, 21 South. 795; Fountain Spring Park Co. v. Roberts, 92 Wis 345, 66 N. W. 399, 53 Am. St. Rep. 917; Simons v. Vulcan Oil & Min. Co., 61 Pa. 202, 100 Am. Dec. 628; Moore v. Warrior Coal & Land Co., 178 Ala. 234, 59 South. 219, Ann. Cas. 1915B, 173; Wills v. Nehalem Coal Co., 52 Or. 70, 96 Pac. 528; Cuba Colony Co. v. Kirby et al., 149 Mich. 453, 112 N. W. 1133; Travis v. Travis, 140 App. Div. 191, 124 N. Y. Supp. 1021; See v. Heppenheimer, 69 N. J. Eq. 36, 61 Atl. 843.

We are of opinion that the judgment of the trial court is correct, and should be affirmed.

By the Court: It is so ordered.