PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1204
_____

IN RE: SEMCRUDE L.P., et al.,
                                        Debtors


Thomas L. Kivisto,
                              Appellant

_____

On Appeal from United States Bankruptcy Court
for the District of Delaware
(08-bk-11525)
Honorable Brendan L. Shannon, U.S. Bankruptcy Judge
_____

Argued December 9, 2014
Before:  FUENTES, FISHER and KRAUSE, *Circuit Judges*.

(Filed: August 5, 2015 )

Paul R. Bessette, Esq. ***ARGUED***
James P. Sullivan, Esq.
King & Spalding
401 Congress Avenue
Suite 3200
Austin, TX 78701
        *Counsel for Appellant*

Andrew S. Hicks, Esq.
Adam P. Schiffer, Esq. ***ARGUED***
Schiffer Odom Hicks & Johnson
700 Louisiana
Suite 2640
Houston, TX 77002

Gary F. Seitz, Esq.
Gellert Scali Busenkell & Brown
601 Walnut Street
The Curtis Center, Suite 280 South
Philadelphia, PA 19106
        *Counsel for Appellees*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Thomas L. Kivisto, co-founder and former President and CEO of SemCrude L.P., an Oklahoma-based oil and gas company, allegedly drove SemCrude into bankruptcy through his self-dealing and speculative trading strategies. SemCrude's Litigation Trust sued Kivisto, and the parties reached a settlement agreement and granted a mutual release of all claims. One month later, a group of SemCrude's former limited partners (collectively, "Oklahoma Plaintiffs") sued Kivisto in state court, alleging breach of fiduciary duty, negligent misrepresentation, and fraud. Kivisto filed an emergency motion to enjoin the state action on the theory that the Oklahoma Plaintiffs' claims derived from the Litigation Trust's claims, which the U.S. Bankruptcy Court for the District of Delaware granted. On appeal, the U.S. District Court for the District of Delaware reversed, concluding that the claims were possibly direct and remanded. The Bankruptcy Court thereafter adopted the District Court's order in its entirety and denied injunctive relief. Because we conclude that the claims are derivative, we will reverse.

I.

A.

Kivisto co-founded SemCrude in Tulsa, Oklahoma, in 2000 and served as its President and CEO until 2008. SemCrude provided transportation, storage, distribution, and other oil-and-gas services to crude oil producers and refiners across North America's energy corridor. By 2006, SemCrude became one of the largest privately-held companies in the United States, with assets worth almost $14 billion.

In 2007 and 2008, however, SemCrude was driven into bankruptcy, the cause of which is disputed by the parties. Kivisto blames the company's collapse on, among other

3

market factors, rising oil prices and tight credit markets that were inhospitable to Kivisto's previously successful trading strategy. The Oklahoma Plaintiffs, on the other hand, blame Kivisto for "engag[ing] in a pattern of egregious self-dealing and related-party transactions, commingl[ing] personal and corporate funds, and ma[king] wildly speculative trades for his own benefit" that allegedly caused SemCrude billions of dollars in losses. Appellees' Br. at 2 n.1. In particular, they allege that Kivisto used SemCrude's funds to place bets on oil for his personal benefit through a trading company that he owned with his wife, Westback Purchasing Company, LLC ("Westback"), causing SemCrude to incur a $290 million receivable; and engaged in high-risk, double-or-nothing trades on behalf of SemCrude, stripping SemCrude of its ability to finance its operations and causing over $3 billion in losses. App. 333-43.

The Oklahoma Plaintiffs further allege that Kivisto concealed these decisions and actively misrepresented SemCrude's financial health and stability in order to induce them to invest additional capital or retain their investments in SemCrude. They specifically assert that Kivisto, among other things, misrepresented that SemCrude's "trading positions were always 'delta neutral'" and that it "'closed its positions in its trading books every day,'" and concealed the existence of his personal trading scheme as well as SemCrude's trade exposure and attendant risks. App. 338. The Oklahoma Plaintiffs claim that "Kivisto made these misrepresentations to [the Oklahoma] Plaintiffs during shareholders' meetings, 'informative unitholder meetings,' and other meetings—both formal and informal" in 2000; 2001; April and September 2002; July 2003; December 2004; and later. App. 338. In "reli[ance] upon Kivisto's representations," the Oklahoma Plaintiffs allege that they "contributed millions of dollars to

4

Sem[Crude] through capital contributions made [i]n" December 2000; November 2002; December 2003; January 2005; and May 2006. App. 338.

They also allege that "Kivisto was particularly aggressive in his efforts to induce [the Oklahoma] Plaintiffs to make their 2006 capital contributions." App. 338. On or about May 25, 2006, during a lunch meeting at Southern Hills Country Club in Tulsa that occurred one day before a capital contribution deadline, "Kivisto approached certain of the [Oklahoma] Plaintiffs and made several statements clearly intended to induce them to make these capital contributions." App. 338. He allegedly told some of the Oklahoma Plaintiffs that "you've got 24 hours to get your money in," and "you don't want to miss this one," emphasizing that the value of their shares would increase substantially in the future and that failing to make the contributions would cause them financial loss. App. 338-39 (internal quotation marks omitted). Those Oklahoma Plaintiffs contributed several million dollars to SemCrude shortly thereafter.

In essence, the Oklahoma Plaintiffs claim that, as a result of their personal dealings with Kivisto, they "acted and/or forewent certain actions in reliance upon Kivisto's misrepresentations and omissions. . . . [This is] illustrated, in part, by the millions of dollars [the Oklahoma] Plaintiffs paid to Sem[Crude] in the form of capital contributions." App. 350. They distinguish themselves from other limited partners because they allege that Kivisto's misrepresentations were made specifically to them. They also distinguish themselves as "non-insider" limited partners, claiming that all other limited partners held board or management positions or were involved in "sweetheart side deals" with Kivisto, which allowed these "insiders" to obtain information not available to

the Oklahoma Plaintiffs or dissuaded them from disclosing Kivisto's alleged misconduct. Appellees' Br. at 2.

B.

On July 22, 2008, SemCrude, its parent company, SemGroup L.P., and certain direct and indirect subsidiaries (collectively, "SemCrude") filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. The Bankruptcy Court entered a confirmation order on October 28, 2009, confirming SemCrude's plan of reorganization. The reorganization plan established a Litigation Trust and transferred to it the claims belonging to SemCrude's bankruptcy estate. The Litigation Trust was therefore entitled to pursue SemCrude's claims and distribute the money it recovered to SemCrude's creditors.

In 2009, the Litigation Trust[1] asserted against Kivisto, certain former SemCrude officers, and Westback thirty claims related to breach of fiduciary duty, breach of contract, fraudulent transfer, and unjust enrichment. *See* App. 61-150. Following mediation, the parties reached a $30 million settlement agreement (that was paid out of the directors' and officers' liability insurance policies) and granted a mutual release of all claims. The Litigation Trust also discharged Kivisto and the other SemCrude officers from liability to any party for contribution or indemnity relating to the released claims. The Bankruptcy Court approved the settlement agreement on November 19, 2010.

---

[1] More precisely, the Litigation Trust was substituted as the plaintiff in an adversary proceeding brought by an unofficial committee of SemCrude's unsecured creditors.

6

One month later, on December 22, 2010, the Oklahoma Plaintiffs[2] filed suit against Kivisto and PriceWaterhouseCoopers LLP ("PwC"), SemCrude's pre-bankruptcy auditor, in the Tulsa County District Court in Oklahoma. Asserting injuries allegedly separate and distinct from the injuries sustained by SemCrude, the Oklahoma Plaintiffs sought money damages from Kivisto for breach of fiduciary duty, negligent misrepresentation, and fraud, and from PwC for professional negligence and a violation of the Oklahoma Accountancy Act. *See* App. 325-53. PwC removed the case, but the U.S. District Court for the Northern District of Oklahoma remanded the case back to state court. Ultimately, although PwC is not a party to this appeal, the Bankruptcy Court enjoined the action against PwC as derivative on October 7, 2011,[3] and the District Court affirmed that order on November 15, 2012.

On May 4, 2011, Kivisto filed an emergency motion in the Bankruptcy Court to enjoin the Oklahoma Plaintiffs' lawsuit from proceeding in state court and, specifically, to enforce the confirmation order, the terms of the reorganization plan, and the settlement agreement. He alleged that the Oklahoma Plaintiffs' claims belonged to the Litigation Trust and had been released. SemCrude and the Litigation Trust joined the motion.

---

[2] The Oklahoma Plaintiffs include Cottonwood Partnership, L.L.P; Dunbar Family Partnership, L.P.; Rosene Family L.L.C.; Warren F. Kruger; Katherine A. Kruger; David S. Kruger; and Kathryn E. Shelley.

[3] Prior to the Oklahoma Plaintiffs' suit, the Litigation Trust sued PwC in the Tulsa County District Court for professional negligence, breach of fiduciary duty, and a violation of the Oklahoma Accountancy Act.

The Bankruptcy Court granted the motion to enjoin all three claims on October 7, 2011. It explained that the Oklahoma Plaintiffs' claims were derivative causes of action for the following reasons: (1) "[T]he injury suffered by the Oklahoma Plaintiffs is no different from the injury suffered by SemCrude as a result of Kivisto's wrongful conduct"; (2) the Oklahoma Plaintiffs did not show that Kivisto owed them any duties distinct from his fiduciary duties owed to SemCrude and its other equity holders; and (3) any recovery would be deemed equity in SemCrude's estate and, therefore, the Oklahoma Plaintiffs would not be entitled to recovery outside the terms of the reorganization plan. App. 19. The parties agreed to stay the lawsuit in state court pending final resolution of these proceedings.

The Oklahoma Plaintiffs appealed to the District Court, and, on November 15, 2012, the District Court reversed and remanded the Bankruptcy Court's order on all three claims. The District Court explained that the Bankruptcy Court did not properly consider the Oklahoma Plaintiffs' claims that they had been separately harmed and found that there was a sufficient basis to conclude that they had been. As to negligent misrepresentation and fraud, it pointed to Kivisto's misrepresentations to the Oklahoma Plaintiffs "*personally* to induce them to make capital contributions." App. 36. As to breach of fiduciary duty, it pointed to "the length and nature" of Kivisto's relationship with the Oklahoma Plaintiffs and the "trust and confidence reasonably placed by [the Oklahoma] Plaintiffs in the integrity and loyalty of Kivisto." App. 37 (internal quotation marks omitted). Therefore, since the Oklahoma Plaintiffs sufficiently alleged distinct duties, they "may be able to demonstrate entitlement to a recovery separate from

8

Sem[Crude]." App. 37. The District Court thereafter denied Kivisto's motion for rehearing on March 12, 2013.

On remand, the Bankruptcy Court denied Kivisto's motion to enjoin the negligent misrepresentation and fraud claims, but granted the motion with respect to the breach of fiduciary duty claim. This order was entered on July 2, 2013, and both Kivisto and the Oklahoma Plaintiffs appealed. On October 30, 2013, the Bankruptcy Court amended its order and "adopt[ed] and incorporate[d] by reference herein the legal analysis, findings of fact and conclusions of law of the District Court's November 15, 2012 [] [o]rder, in its entirety." App. 6. It therefore denied Kivisto's motion to enjoin with respect to all three claims. Kivisto timely appealed from the amended order.

## II.

Because Kivisto's motion to enjoin is related to the Chapter 11 reorganization plan and requires a determination that the Oklahoma Plaintiffs' claims are property of the Litigation Trust, the Bankruptcy Court had subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). This Court exercises jurisdiction over Kivisto's direct appeal pursuant to certification by the Bankruptcy Court, the District Court, and the parties acting jointly under 28 U.S.C. § 158(d)(2).[4]

---

[4] The Bankruptcy Court certified Kivisto's request for direct appeal to the Third Circuit in its October 30, 2013, amended order; the parties jointly certified the appeal on November 22, 2013; and the District Court certified the parties' joint request on March 11, 2014, and Kivisto's request on March 31, 2014. This Court authorized the appeal on January 21, 2014.

This Court "review[s] the Bankruptcy Court's factual findings under a clearly erroneous standard and exercise[s] plenary review over legal issues." *In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014). Whether a claim is derivative or direct is a question of (state) law, *see Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 348 (3d Cir. 2001), so we exercise plenary review. While we review a court's denial of injunctive relief for abuse of discretion, plenary review of the issue of derivative status is appropriate here because "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

III.

"The derivative injury rule holds that a shareholder . . . may not sue for personal injuries that result directly from injuries to the corporation." *In re Kaplan*, 143 F.3d 807, 811-12 (3d Cir. 1998) (applying Illinois law). The rule is premised on the legal fiction of corporate existence, in which "an injury to the corporate body is legally distinct from an injury to another person." *Official Comm. of Unsecured Creditors*, 267 F.3d at 348. Under Oklahoma law, which the parties concede controls here, the derivative injury rule does not apply when a shareholder alleges that he or she "sustained any loss *in addition to* the loss sustained by the corporation." *Dobry v. Yukon Elec. Co.*, 290 P.2d 135, 138 (Okla. 1955) (emphasis added). This standard extends to limited

10

partnerships.[5]  Okla. Stat. Ann. tit. 54, § 500-1001A(b) ("A partner commencing a direct action under this section is required to plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership.").

We discuss the Oklahoma Plaintiffs' claims for (A) negligent misrepresentation and fraud[6] and (B) breach of fiduciary duty in turn.  The Court ultimately concludes that the Oklahoma Plaintiffs fail to show "any loss in addition to" SemCrude's loss and, therefore, that their claims derive from the claims released by the Litigation Trust.

---

[5] Under Oklahoma law, we may rely upon corporate as well as partnership case law in analyzing the derivative/direct nature of the Oklahoma Plaintiffs' claims because the determination is substantially the same in the corporate and limited partnership contexts.  *See Lenz v. Associated Inns & Rests. Co. of Am.*, 833 F. Supp. 362, 379 n.18 (S.D.N.Y. 1993) (applying Oklahoma law); *see also Adco Oil Co. v. Rovell*, 357 F.3d 664, 666 (7th Cir. 2004) (construing Oklahoma law and applying the derivative injury rule in a limited partnership context).

[6] The District Court and the parties treat negligent misrepresentation and fraud together in light of their doctrinal similarity under Oklahoma law.  *See* App. 36 (citing *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 197 (Okla. Civ. App. 1999) (stating the elements for fraud); *Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 991 (10th Cir. 1994) (stating the elements for negligent misrepresentation)).

11

A.

1.

Before analyzing whether the Oklahoma Plaintiffs' claims state derivative or direct causes of action, we lay out the analytical framework established by the Supreme Court of Oklahoma in *Dobry v. Yukon Electric Company*, 290 P.2d at 138. The parties agree that *Dobry* creates the governing standard for determining the derivative status of claims in Oklahoma.

The *Dobry* Court considered whether the plaintiff-stockholder could bring a direct claim against the directors of a corporation whose fraudulent conduct resulted in loss "by depriving [the shareholder] of dividends which he might otherwise have received or by depressing the value of his stock." *Id.* at 137. Adopting the universal principles underlying the derivative injury rule, the Court explained that there is no individual loss in such a situation:

> In view of the legal concept of corporate entity under which stockholders as such lose their individualities in the individuality of the corporation as a separate and distinct person, and of the fact that stockholders by investing their money in the corporation recognize it as the person primarily entitled to control and manage its use for the common benefit of all the stockholders, it is a well-established general rule that a stockholder of a corporation has no personal or individual right of action against third persons, including officers and directors of the corporation, for a wrong or injury to the corporation which results in the destruction or depreciation of the value of his stock, *since the wrong thus suffered by the stockholder is*

> *merely incidental to the wrong suffered by the*
> *corporation and affects all stockholders alike*.

*Id.* (quoting H.A. Wood, Stockholder's Right to Maintain (Personal) Action Against Third Person as Affected by Corporation's Right of Action for the Same Wrong, 167 A.L.R. 280 (1947)) (emphasis added). In other words, the Court underscored, where the alleged loss stems from management's wrong to the corporation that incidentally affects the shareholder's stock and affects all shareholders alike, the rights are derivative. This is because "'[i]t was not as individuals that plaintiffs suffered detriment and damage, but as stockholders in common with others similarly situated. No fraud or deceit was practiced on plaintiffs, nor was any illegal act performed to their detriment, which was not common to all persons similarly situated in their legal relations to defendants.'" *Id.* at 138 (quoting *Stuart v. Robertson*, 248 P. 617, 619 (Okla. 1926)).

The Court reiterated the following rule: "'If the plaintiff has sustained no loss in addition to the loss to the corporation, the action cannot be maintained as an individual even though the wrongful acts were done with the specific intent of injuring the plaintiff.'" *Id.* at 137 (quoting 12B Fletcher Cyc. Corp. § 5914). It concluded that "[i]n the instant case the plaintiff did not allege . . . that he sustained any loss in addition to the loss sustained by the corporation. His loss was only incidental to the corporation's loss and under the rules set forth herein, his rights were derivative." *Id.* at 138.

With this backdrop, we turn to whether the Oklahoma Plaintiffs allege direct claims—that is, whether they allege loss "in addition to" SemCrude's loss.

13

2.

Because whether a suit is derivative or direct is drawn from the face of the complaint, *see* 12B Fletcher Cyc. Corp. § 5913, our analysis is drawn from the state-court petition filed by the Oklahoma Plaintiffs against Kivisto.

The Oklahoma Plaintiffs' first claim for distinct loss is based on Kivisto's alleged face-to-face misrepresentations and omissions directed at the Oklahoma Plaintiffs during formal and informal limited partner meetings, in particular the 2006 lunch meeting at the Southern Hills Country Club, and based on their alleged status as "non-insider" limited partners. They allege that they relied on Kivisto's inducement by (a) making additional capital contributions and (b) foregoing opportunities to sell their limited partner units.

Kivisto counters that the Oklahoma Plaintiffs are functionally indistinguishable from any other investor who acted upon or forewent opportunities to sell their limited partner units as a result of Kivisto's misrepresentations and omissions. He argues that all SemCrude limited partners suffered the same loss of capital on a *pro rata* basis as a result of his alleged misconduct and, therefore, the Oklahoma Plaintiffs' "[r]espective losses differ only in amount, not in kind," making their claims derivative. Appellant's Br. at 30.

We agree. "It is well settled that an injury done to the stock and capital of a corporation by the negligence or misfeasance of its officers and directors is an injury done to the whole body of stockholders in common, and not an injury for which a single stockholder can sue." *Stuart*, 248 P. at 619 (internal quotation marks omitted); *see also* 12B Fletcher Cyc. Corp. § 5913 ("The reasoning behind this rule is said to be that a diminution in the value of corporate stock resulting

14

from some depreciation or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder."). Nor may claims for corporate mismanagement be brought directly. *See Weston v. Acme Tool, Inc.*, 441 P.2d 959, 962 (Okla. 1968) ("The remedial rights of minority stockholders with respect to wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights . . . ."). Accordingly, to the extent the Oklahoma Plaintiffs' claims are masked claims for a diminution in value of their limited partner units as a result of Kivisto's mismanagement, their claims are derivative of the claims released by the Litigation Trust. *See Lipton v. News Int'l, Plc*, 514 A.2d 1075, 1078 (Del. 1986), *disapproved of on other grounds by Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004) ("[W]e must look to the nature of the wrongs alleged in the body of the complaint, not to the plaintiff's designation or stated intention."); *Arent v. Distribution Scis., Inc.*, 975 F.2d 1370, 1373 (8th Cir. 1992) ("[T]he fact that plaintiffs framed the harm as a direct fraud [does] not permit them to go forward on a claim that [i]s, at its core, derivative.").

Of course, the Oklahoma Plaintiffs oppose this characterization and attribute their injury before SemCrude's bankruptcy in 2008 to the various times when the Oklahoma Plaintiffs contributed additional capital or retained their investments as a result of Kivisto's inducement. They argue that, at the times they were induced to contribute, the capital they received was not worth what they paid. However, closer scrutiny reveals that the gravamen of the Oklahoma Plaintiffs' injury is the demise of SemCrude as a result of Kivisto's alleged misconduct. That is, the course of conduct underlying the Oklahoma Plaintiffs' alleged loss—i.e.,

15

Kivisto's failure to disclose his risky trades or self-dealing or actively misrepresenting SemCrude's trading positions—is the exact same conduct underlying the alleged cause of SemCrude's bankruptcy and, therefore, the Litigation Trust's released claims against Kivisto. *See* App. 326 (asserting in their state court petition that Kivisto's speculative trading strategy and self-dealing caused the Oklahoma Plaintiffs to "los[e] the full value of their limited partnership units when Sem[Crude] declared bankruptcy in July 2008"). Thus, the Bankruptcy Court got it right the first time it passed on the issue: "[T]he injury suffered by the Oklahoma Plaintiffs is no different from the injury suffered by SemCrude as a result of Kivisto's wrongful conduct. Indeed, the Oklahoma Plaintiffs' alleged loss of capital went hand-in-hand with the titanic losses that SemCrude suffered in the run-up to its bankruptcy filing." App. 19. The Oklahoma Plaintiffs' alleged injury therefore derives from SemCrude's injury. *See, e.g.*, *Arent*, 975 F.2d at 1374 ("[Plaintiffs'] claim also fails as a matter of law because any injury to plaintiffs was not caused by [the corporation's] failure to disclose. Plaintiffs were not harmed because they were unable to realize the true value of their stock—they were harmed because the true value of their stock was zero."); *Crocker v. FDIC*, 826 F.2d 347, 350-51 (5th Cir. 1987) (holding that minority shareholders' claims that they "would have" sold their stock had they known that the corporation was failing was, at its core, nothing more than a derivative claim for diminution in the value of corporate stock).

Accordingly, the Oklahoma Plaintiffs are unable to show that they experienced any loss "in addition to" the other

equity holders or, equally, the company,[7] who were injured by Kivisto's alleged misconduct and experienced the same *pro rata* loss by investing or failing to divest their units. "Where all of a corporation's stockholders are harmed and would recover *pro rata* in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008); *see also Empire Life Ins. Co. of Am. v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir. 1972) (explaining that claims are derivative where "each shareholder suffers relatively in proportion to the number of shares he owns"). Try as they may to distinguish themselves from other limited partners, the Oklahoma Plaintiffs' losses differ only in amount, not in kind.

And even if the Court found *arguendo* that the Oklahoma Plaintiffs were uniquely harmed, the Oklahoma Plaintiffs still may not bring claims directly because they have no right to recover the losses they assert. The Oklahoma Plaintiffs' asserted losses are the "millions of dollars [they] paid to Sem[Crude] in the form of [additional] capital contributions" at Kivisto's specific request. App. 350; Appellees' Br. at 21. However, any such recovery would be considered equity in SemCrude's estate, which belongs to the Litigation Trust. "[D]estruction or depreciation of the value of [a shareholder's] stock . . . is merely incidental to the wrong suffered by the corporation and affects all stockholders alike." *Dobry*, 290 P.2d at 137 (internal quotations marks omitted). Accordingly, the Oklahoma Plaintiffs cannot show

---

[7] *See Jarvis v. Great Bend Oil Co.*, 168 P. 450, 454 (Okla. 1917) ("Where the injury is to the stockholders collectively it is said to be an injury to the corporation.") (internal quotation marks omitted).

17

that they are entitled to receive the benefit of recovery without showing an injury to SemCrude. *See Tooley*, 845 A.2d at 1039 ("The stockholder must demonstrate that . . . he or she can prevail without showing an injury to the corporation.").[8]

The Oklahoma Supreme Court's decision in *Jarvis v. Great Bend Oil Co.*, 168 P. 450 (Okla. 1917), and *Johnson v. Render*, 270 P. 17 (Okla. 1928), which the parties heavily dispute, drives this principle home. In *Jarvis*, a corporation's promoters induced investors to pay an inflated price for the corporation's stock by fraudulently misrepresenting the price

---

[8] Kivisto asserts for the first time on appeal that *Tooley* should not be used to decide the derivative status of claims in Oklahoma. However, it appears that he specifically makes this argument with regard to *Tooley*'s disavowal of the "special injury" test used to identify direct claims. *See* Appellant's Br. at 22 n.5; *see also Tooley*, 845 A.2d at 1033, 1035, 1037-39 (disapproving of the "special injury" concept and establishing that the analysis must turn solely on "(1) who suffered the alleged harm" and "(2) who would receive the benefit of any recovery or other remedy"); *cf. id.* at 1036 (explaining that the second inquiry "is helpful in analyzing the first prong of the analysis: what person or entity has suffered the alleged harm? The second prong of the analysis should logically follow."). While we may generally look to Delaware law in construing Oklahoma corporate law, *see Beard v. Love*, 173 P.3d 796, 802 (Okla. Civ. App. 2007) ("[I]n the absence of Oklahoma authority we may consult decisions from the courts of Delaware and other jurisdictions concerning derivative actions."), we do not rely on the special injury test here and therefore do not reach whether *Tooley* is inconsistent with *Dobry* on this basis.

of an oil-and-gas lease, which the corporation thereafter purchased. 168 P. at 450-53. The corporation sued the promoters, and the promoters argued that the corporation did not have standing because the fraud occurred "prior to the organization of the [] corporation." *Id.* at 453. On appeal, the *Jarvis* Court held that the right of action was properly vested in the corporation because the promoters purchased the lease using corporate funds previously paid in by the investors collectively. In other words, the investors could not bring direct claims; the wrong complained of was fraud against the newly-formed corporate entity, which received a lease worth less than the amount of corporate funds used to buy it. As a result, all shareholders were affected equally (in proportion to their contributions), and "each [shareholder] will be made whole if the corporation obtains compensation or restitution from the wrongdoer." *Empire Life Ins. Co.*, 468 F.2d at 335.

On the other side of the spectrum is *Johnson*. In *Johnson*, the promoters of a corporation induced the plaintiff, S.P. Render, to pay an additional "bonus" for the company's stock by misrepresenting the corporation's value and then pocketing the bonus for their own benefit. 270 P. at 17-18. The Court rejected appellees' allegation that the right to sue was vested in the corporation. It explained that, unlike in *Jarvis*, "[i]n the instant case neither the corporation nor the stockholders collectively were defrauded of any sum whatsoever, [because] the corporation received value, dollar for dollar, for its stock," and because "no breach of duty was violated as against the corporation or the stockholders collectively." *Id.* at 20. Rather,

> The fraud complained of was against the
> plaintiff, Render, individually, was a breach of
> duty under the original agreement between him
> and the defendants . . . . The fraud arose from a

19

> misrepresentation as to the payment of a bonus whereby plaintiff was induced to pay a sum of money not in accord with and in violation of their original agreement.

*Id.* Accordingly, the Court was "unable to see where the corporation in the instant case would have the right to maintain any action against the defendants for the recovery and return of the sum sought to be recovered by the plaintiff, Render." *Id.*[9]

---

[9] The parties also dispute an unpublished, federal district court opinion, *Stoner v. Ford*, No. 74-311, 1974 WL 476 (N.D. Okla. Dec. 24, 1974) (applying Oklahoma law), which has the least force but which we discuss here for the sake of completeness. In *Stoner*, the plaintiff brought a suit against the promoters and directors of a corporation alleging, among other things, that the defendants fraudulently induced him to purchase stock in their company by failing to disclose that they watered the stock and made a secret profit. *Id.* at \*4. The *Stoner* Court considered both *Jarvis* and *Dobry* and held that the fraudulent inducement claim was a direct claim, i.e., a "wrong[] affecting Plaintiff as an individual, distinct from any harm to the entire body of shareholders." *Id.* at \*5. To the extent *Stoner* bears any force, it speaks to the broader principle that inducing a particular individual to purchase stock may be a direct injury if the fraud injures neither the shareholders collectively nor the corporation. Like in *Johnson*, in *Stoner* "the fraud complained of had its inception before the corporation was organized. It was a personal transaction between individuals." *Johnson*, 270 P. at 20-21 (internal quotation marks omitted). Compared to the case at bar, where Kivisto's alleged misconduct induced contributions beyond the Oklahoma Plaintiffs' pre-existing

Here, the Oklahoma Plaintiffs' claims fall along the lines of *Jarvis*, not *Johnson*. SemCrude, not the Oklahoma Plaintiffs, had the right to pursue an action to recover from Kivisto's fraudulent conduct towards SemCrude and its equity holders collectively. SemCrude, not the Oklahoma Plaintiffs in their individual capacities, was defrauded by Kivisto's misrepresentations and omissions and injured by his alleged misconduct. Because "the injury or wrong complained of was a fraud against the corporation or its subscribers collectively," "the right of action or recovery [i]s in the corporation." *Id.* "Stated differently, the misconduct alleged by [the Oklahoma Plaintiffs] did not injure [them] or any other [unit]holders directly, but instead only injured them indirectly as a result of their ownership of [SemCrude's units]." *See Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 385 (5th Cir. 2005). Accordingly, the Oklahoma Plaintiffs' claims for negligent misrepresentation and fraud are derivative of the claims belonging to—and, importantly, released by—the Litigation Trust.

B.

The Oklahoma Plaintiffs' second basis for asserting direct injuries is that Kivisto breached fiduciary duties owed

equity interests, "[t]he misrepresentations that allegedly caused [their] losses injured not just [the Oklahoma Plaintiffs] but the corporation as a whole." *See Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384-85 (5th Cir. 2005); *see also Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1177 (Del. Ch. 2006) ("[T]he main dividing line between direct and derivative claims styled as 'fraudulent inducement,' [is] whether the plaintiff has alleged some injury other than that to the corporation."). Thus, *Stoner* is inapposite.

21

to them as individuals. It is not disputed that Kivisto, as the President and CEO of SemCrude, owed fiduciary duties to SemCrude, the Oklahoma Plaintiffs, and all other equity holders in that role. *See, e.g.*, *Wilson v. Harlow*, 860 P.2d 793, 798 (Okla. 1993). The question is whether Kivisto owed separate and distinct fiduciary duties to the Oklahoma Plaintiffs, and whether the Oklahoma Plaintiffs were individually injured on the basis of the breach of those duties such that they are entitled to recover separately from SemCrude.

Oklahoma Plaintiffs argue that a separate fiduciary duty was formed based on the parties' longstanding relationship of trust that led the Oklahoma Plaintiffs to rely on Kivisto's superior influence and expertise. They point to Oklahoma law that recognizes the existence of de facto fiduciary relationships, in various contexts outside derivative suits, where (1) "there is confidence reposed on one side [of a relationship] and resulting domination and influence on the other," *Lowrance v. Patton*, 710 P.2d 108, 111 (Okla. 1985); and (2) even when there is no duty to speak, someone "volunteers to speak and to convey information which may influence the conduct of the other party," and, as a result, "he or she is bound to disclose the whole truth," *Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1047 (Okla. 2013). They also

22

rely on an Oklahoma pattern jury charge[10] and other authority to argue that "whether a separate fiduciary [relationship] exist[s] is a question of fact for the jury." Appellees' Br. at 35-41.

To be sure, these cases point to a broad interpretation of when a fiduciary duty exists under Oklahoma law. *See Lowrance*, 710 P.2d at 111 ("[C]ourts of equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may spring."). However, as Kivisto emphasizes, Oklahoma courts have never identified a violation of a supposed "special duty" to a shareholder in this context as loss "in addition to" the loss sustained by the corporation under *Dobry*. Nor has any other court to our knowledge found a direct injury in the context of a derivative or direct suit on the basis of a general relationship that forms from a power imbalance or out of an obligation to speak the truth. If we found direct claims here, there is no reason why the other limited partner unitholders, or any other shareholder for that matter, could not bring direct claims. Indeed, it would be difficult to cognizably administer this much broader rule the Oklahoma Plaintiffs ask us to endorse. A reviewing court would be forced to determine which communications to which equity holders and in what contexts would be

---

[10] The Oklahoma Uniform Jury Instructions state that a jury can find a fiduciary relationship "based upon the . . . [parties'] relationship and the other circumstances in th[e] case. A fiduciary relationship exists whenever trust and confidence are reasonably placed by one person in the integrity and loyalty of another, and the other person knowingly accepts that trust and confidence and then undertakes to act on behalf of the person." Okla. Unif. Jury Instr. 26.2.

actionable for breach of duty, which appears to undermine the principles behind the derivative injury rule. *See Dobry*, 290 P.2d at 137 (explaining "the legal concept of corporate entity under which stockholders as such lose their individualities in the individuality of the corporation as a separate and distinct person") (internal quotation marks omitted). Thus, the Bankruptcy Court was not wrong in the first instance to conclude that the Oklahoma Plaintiffs' allegations for breach of fiduciary duty were insufficient.

Still, even assuming *arguendo* that Kivisto owed the Oklahoma Plaintiffs unique, individual fiduciary duties in addition to the duties owed to them in their legal capacity as unitholders, the Oklahoma Plaintiffs can show neither that they were injured separately from the company or all other unitholders on the basis of that misconduct, nor that they were entitled to recovery of the units they allegedly would not have contributed or would have sold but for Kivisto's misconduct. Thus, for the same reasons we provided above, the Oklahoma Plaintiffs' breach of fiduciary duty claim is derivative.

## IV.

For the reasons set forth above, we conclude that the Oklahoma Plaintiffs' claims are derivative of the claims rightfully belonging to, and released by, SemCrude's Litigation Trust. As such, we reverse the Bankruptcy Court's order denying Kivisto's motion to enjoin and direct it to enter a permanent injunction forbidding the Oklahoma Plaintiffs' claims from proceeding in state court.

24